# Richmond.

## Davis v. City of Lynchburg.

### May 3d, 1888.

Absent, Richardson, J.

1. City Charter—*Constitution.*—A city charter provides that whenever a street is opened, etc., the city council may apportion the expense between the city and the owners of real estate benefitted thereby and direct that their share of the expense be collected as city taxes, &c., is not repugnant to 14th amendment United States Constitution, in that it contains no provision for the party affected to appear and contest the proceeding. *Norfolk City* v. *Ellis*, 26 Gratt., 227.
2. Idem—*Taxation—Assessment by foot front.*—The constitutional provision requiring taxation to be equal and uniform and *ad valorem*, relates to taxation for revenue and not to special assessments by municipalities for local improvements. *R. & A. R. R. Co.* v. *City of Lynchburg*, 81 Va., 473. And the system of assessing real estate adjacent to a street to be improved by the foot front, is constitutional.

Error to judgment of corporation court of city of Lynchburg rendered June 30th, 1885, in an action at law wherein Louisa Davis was plaintiff, and the city of Lynchburg was defendant. The judgment being against the plaintiff, she brought up the case on writ of error and *supersedeas*. Opinion states the case.

*Kirkpatrick and Blackford*, for the plaintiff in error.

The question involved in this case is a new one in this court. It is, whether an assessment for a local improvement can be

exacted by a municipal corporation, until the person of whom it is exacted shall have had an opportunity to appear and contest the legality, justice and correctness of the assessment.

The appellant is advised that such an exaction is illegal; that it violates the fundamental principles of the law of the land, and is specially inhibited by the 14th amendment of the Constitution of the United States, which declares that no State shall " deprive any person of life, liberty or property *without due process of law.*"

The courts have studiously refrained from making any exhaustive definition of the words " due process of law." They have passed on each case as it arose, and thus by a process of judicial inclusion and exclusion, have secured a definition which is constantly approaching completeness. And in regard to the matter of taxation and assessments, the supreme court of the United States, in *Davidson* v. *New Orleans*, 96 U. S., 97, at p. 104, thus defines these words: " Whenever by the laws of a State or by State authority a tax, assessment, or other burden is imposed upon property for the public use, whether it be for the whole State or of some mere limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious to other objections."

In *Hagar* v. *Reclamation Dist.*, 111 U. S., 701, at 708, the same court states the same doctrine. " It is sufficient to observe here that by ' due process of law' is meant one which, following the forms of law, is appropriate to the case and just to the parties to be affected. It must be pursued in the ordinary mode prescribed by the law; it must be adapted to the end to be attained; and whenever it is necessary for the protection of the parties, it must give them an opportunity to be

heard respecting the justice of the judgment sought." See the very important and ably considered case of *Pennoyer* v. *Neff*, 95 U. S., 714.

Judge Cooley, in discussing the mode of assessing taxes, etc., says : " In such proceedings it must be a matter of the utmost importance to the person assessed that he should have some opportunity to be heard before the charge is fully established against him, and it would seem to be a dictate of strict justice that they should make reasonable provision to secure him as far as may be against partiality, malice and oppression." Cooley on Taxation, p. 265. Again on the next page he says : " We should say that notice of proceedings in such cases, and an opportunity for a hearing of some description, were matters of constitutional right."

In the case of *Stuart* v. *Palmer*, 74 N. Y., 183, the court of appeals of New York, in 1878, discussed this question with exhaustive ability and learning. This case has attracted very general attention, and, so far as is known, has never been overruled or questioned. Very many courts, of the highest standing, have followed it implicitly. In that case the court held that "a law imposing an assessment for a local improvement without notice to and a hearing, or an opportunity to be heard, on the part of the owner of the property to be assessed, has the effect to deprive him of his property without due process of law, and is unconstitutional. It is not enough that the owner may, by chance, have notice, or that he may, as a matter of favor, have a hearing; the law must require notice and give a right to a hearing. The constitutional validity of a law is to be tested not by what has been done, but what may by its authority be done." The court declared all the proceedings under the law in question utterly null and void.

Two very notable cases involving this question have been recently decided by the U. S. circuit court of California. Reference is made to the cases of *Co. of San Mateo* v. *So. Pac. R. R. Co.* and *Co. of Santa Clara* v. *Same.* The former is

reported in 8 Eng. and Am. R. R. Cases, 1. The opinions of
Justice Field and Judge Sawyer are very elaborate and able
discussions. In speaking of the clause in the 14th amendment
of the constitution of the U. S., Justice Field says: "It is sig-
nificant that the guarantee against the deprivation of property
without due process of law is contained in the clause which
guarantees against a like deprivation of life and liberty; and
it means that there shall be no proceeding against either with-
out the observance of all the securities applicable to the case,
recognized by the general law, by those principles which are
established in all constitutional governments for the protection
of private rights. Notice is absolutely essential to the validity
of the proceeding in any case. It may be given by personal
citation, and in some cases it may be given by statute; but
given it must be in some form. If life and liberty are involved,
there must be a regular course of judicial proceedings; so,
also, where title or possession of property is in contention.
But in the taking of property by taxation, the proceeding is
more summary and stringent. The necessities of revenue for
the support of government will not admit of the delays attend-
ant upon judicial proceedings in courts of justice. The statute
fixes the rate of taxation upon the value of the property, and
appoints officers to estimate and appraise the value. Due pro-
process of law in the proceeding is deemed to be pursued when,
after the assessment is made by the assessing officers upon such
information as they may obtain, the owner is allowed a reason-
able opportunity, at a time and place to be designated, to be
heard respecting the correctness of the assessment and to show
any errors in the valuation committed by the officers. Notice
to him will be deemed sufficient if the time and place of hear-
ing are designated by the statute. But whatever the character
of the proceeding, whether judicial or administrative, summary
or protracted, and whether it takes property directly or creates
a charge of liability, which may be the basis of taking it, the
law directing the proceeding must provide for some kind of

notice and offer to the owner an opportunity to be heard, or the proceeding will want the essential ingredient of due process of law. Nothing is better established by a weight of authority, absolutely overwhelming, than that notice and opportunity to be heard are indispensable to the validity of the proceeding." The court then cites the opinion of the supreme court of the U. S. in *Davidson* v. *New Orleans*, and of the court of appeals of N. Y. in *Stuart* v. *Palmer, supra.*

The supreme court of California, in several cases, has declared the same doctrine. In *Mulligan* v. *Smith*, 59 Cal., 206 that court said: "It is a principle which underlies all forms of government by law, that a citizen shall not be deprived of life, liberty, or property without due process of law. The legislature has no power to take away a man's property, nor can it authorize its agents to do so, without first providing for personal notice to be given him, and for a full opportunity of time, place, and tribunal to be heard in defence of his rights. This constitutional guarantee is not confined to judicial proceedings, but extends to every case in which a citizen may be deprived of life, liberty, or property, whether the proceeding be judicial, administrative, or executive in its nature." See also *Patten* v. *Green*, 13 Cal., 329.

In *Cooper* v. *Board of Public Works*, 108 E. C. L. R., 181, involving the action of the Board of Public Works in pursuance of a statute which did not require notice, Willes, J., said "I apprehend that a tribunal which is, by law, invested with power to affect the property of one of her majesty's subjects, is bound to give such subject an opportunity of being heard before it proceeds. And that rule is of universal application, and founded upon the plainest principles of justice."

Similar decisions have been made by the highest courts of many other states, as will be seen by reference to the following cases: *Thomas* v. *Gain*, 35 Mich., 155; *Jordan* v. *Hyatt*, 3 Barb., 430; *The State* v. *Jersey City*, 24 N. J. L., (4 Zabr.), 662; *State* v. *Newark*, 31 *Id.*, 360; *State* v. *Trenton*, 36 *Id.*, 499; *State* v.

*Elizabeth*, 37 *Id.*, 357; *State* v. *Plainfield*, 38 *Id.*, 97; *Griffin* v. *Mixon*, 38 Miss., 424; *Darling* v. *Gunn*, 50 Ill., 424; *Gatch* v. *City of Des Moines*, N. W. Rep., 310; *S. C.* 3 Am. and Eng. Corp. Cases, 622, and cases there cited; *Brown* v. *City of Denver*, 3 Am. and Eng. Corp. Cases, 631; and 7 Rob. Prac., 26, and notes.

The importance of this question will be seen in startling light when it is considered that this court has declared that the provisions of our State constitution regulating and controlling the powers of taxation do not apply to the subject of assessments; that such assessments are not required to be uniform, equal and according to value, and that the councils of cities have the arbitrary power to make the single matter of abuttage, the rule and measure of the proportion of burden to be borne by the land-owners affected. If these propositions are true, it is easy to see what oppression and what corruption are likely to attend the imposition of these assessments in our cities. See the case of *Norfolk City* v. *Ellis*, 26 Gratt., 224. It thus appears that unless the provision of the U. S. constitution here invoked, applies—unless it shall be always required that, before any such assessment shall be exacted, the person interested shall have a tribunal to which he can appeal, and a time and place appointed when he can be heard in defence of his rights—these rights are in a condition of pitiable defencelessness. Experience has shown how frequently these matters of city interest fall into the hands of greedy and unscrupulous rings, which it is often almost impossible to control or dislodge, and if this court shall say that these large expenditures, these impositions, which are harsh and oppressive when administered with strictest observance of law and right, may be made without giving those involved a hearing, it is not difficult to foresee that, at no distant day, the cities of this commonwealth will be cursed with all the corruption, fraud, and oppression which have prevailed in the large northern cities for so many years.

The statutes regulating the assessments of property for State

taxation have always been careful that no assessment—however unimportant and valueless—should go into effect until the owner had ample opportunity to have it corrected by some judicial tribunal. Samples of these statutes may be found in the Code of 1873, ch. 32, sec. 6, ch. 33, secs. 86, 92, and ch. 34, secs. 74, 84. How strange, how contrary to all custom and usage, that assessments, often involving such large amounts, and often imposing burdens on real estate which come near destroying its value, should be without the protection of law.

II. The appellant also insists that there is error in the said judgment, because the ordinances under which the said assessment was made violate the constitution of Virginia—Art. X, secs. 1 and 2—and violate also the charter of the city.

The charter of the city provides that, "whenever any new street shall be opened, any existing street, graded or paved, or any culvert or other public improvement made, the city council may determine what proportion of the expenses thereof shall be paid by the city, and what portion by the owners of real estate benefitted thereby," &c. This provision contemplates that every such improvement as is mentioned should be specifically examined and passed upon by the city council; and that in each case the question as to who are benefitted, and what their respective benefits and burdens are, shall be passed upon. Such a proceeding in each case is absolutely necessary in order that any degree of justice should be attained. Yet the city ordinances are made, not for each case as it arises—not when any such improvement is ordered—but beforehand, and for all sorts of cases. All are regulated by a general law; by the same rule, regardless of the fact that no two cases can be alike, and that a general rule in a matter like this is obliged to work grievous injustice to many. The provision of the charter is therefore violated by the ordinances, and the latter are therefore void.

III. These ordinances also violate the provision of the constitution above referred to. *Clapp* v. *Hartford*, 35 Conn., 66;

10 Wisconsin, 242; vid. also Desty on Taxation. The appellant makes this point in order that this court may review the decision made by a majority of the court in *Norfolk City* v. *Ellis*, 26 Gratt. There it is declared that assessments for local improvements are not subject to the constitutional rule of equality and uniformity. The appellant insists that these assessment are only a form of taxation, and that they must be levied in proportion to the value of the properties affected and the benefits conferred. To say, as these ordinances say, all cases are alike; all shall be regulated by the same rule; that abuttage only shall determine who are benefited and how much each is benefited, is to make an iron rule utterly unlike the rule prescribed both by the constitution and by the charter of the city.

IV. Again it will be seen that the street improved in this case was a turnpike, which was transferred to the city as a turnpike, under a special law and under a contract between the city and turnpike company, and the appellant insists that any assessment for improving this highway was illegal.

V. And finally, the court will observe how vague and loose are the general ordinances of the city of Lynchburg, regulating this matter of local assessments, and what arbitrary and extraordinary powers are vested in the city engineer. He is made sole judge of the expense of these local improvements. He can say what are and what are not the elements going to make up that expense. He and only he can say who are the owners of the abutting properties; what number of feet of abuttage is owned by each and what specific amount each is to contribute. The land owner may say that the improvement has been an injury instead of a benefit to him. The grade of a street through a city of hills, like Lynchburg, may and often does leave one side a precipice, while the depressions and ravines of the other are leveled up; the abutting owner may be a tenant for a life or a term soon to determine, so that it would work great injustice to impose the whole cost on him; his fences

may embrace more abutting feet than he actually owns; the expense of the improvement may be made to embrace elements which do not properly belong to it; the contract to make the improvement may have been corruptly and fraudulently given out, and the work may have been imperfectly executed—any or all these matters may be involved in the assessment of the city engineer. Yet in all these respects he acts on his own knowledge and judgment, against which, protest as he may, the land owner is without a hearing and remediless. In passing on all these questions, it is manifest that judicial functions are involved. See Sedgwick on Const. Law, 169, 174–5, 177; *State* v. *Collector of Newark,* 1 Dutcher, 315; *The People* v. *The Mayor,* 5 Barb., 43; and *Parks* v. *Mayor of Boston,* 8 Pick., 218. But, whether judicial or administrative, the result is the same.

*R. G. H. Kean,* for the defendant in error.

Lacy, J., delivered the opinion of the court.

This suit was brought to recover of the city of Lynchburg the sum of $99, the amount of an assessment made by the city against the plaintiff, who is the owner of a lot fronting 120 feet on Grace street in said city. The assessment was made under the seventh section of the city charter, which provides that, whenever any new street shall be opened, any street graded or paved, or any culvert or other public improvement made, the city council may apportion the expense between the city and the owners of the real estate benefitted thereby, and may order that the whole expense shall be borne by the owners of such real estate, and to be collected as city taxes; but this improvement must not be made except upon the petition of a majority of the owners of such real estate, or unless, in ordering such improvement, three-fourths of said council shall concur; which is in accordance with general ordinance No. 1.

When the improvement in question was made, it was done on the recommendation of the street committee of the city council, and ordered by a unanimous vote of the council. The plaintiff in error claims that this assessment is in violation of the fourteenth amendment to the constitution of the United States, because no provision is made for the person to appear and contest the proceedings, and that he is thus deprived of his property without due process of law.

As we have seen, the assessment is expressly authorized by the legislature in the seventh section of the charter. That the legislature had the power to authorize these assessments is settled. *Norfolk* v. *Ellis*, 26 Gratt., 224. When this work was done the cost was estimated per foot. Under the general ordinance the city bore one-half, and each lot-owner on either side one-fourth, and the share of the plaintiff was thus ascertained to be $99, her front being 120 feet. This regular proceeding was reported duly and regularly to the council, and then approved. No complaint was ever made to the council by any person that anything was done irregularly or erroneously, while the work progressed for months, under the provisions of the general public law know to all.

It is claimed that the fourteenth amendment to the constitution of the United States invalidates the ordinance, and everything which has been done under it because the ordinance does not provide that the owners shall be served with notice of the assessment and given a time and a place to show cause against it. There are decisions cited by the learned counsel for the plaintiff in error which seem to hold these views. *Stuart* v. *Palmer*, 74 N. Y., 188; *Santa Clara Co.* v. *Railroad Co.*, 18 Fed. Rep., 385; *Mulligan* v. *Smith*, 59 Cal., 206; *Gatch* v. *City of Des Moines*, 3 Am. & Eng. Corp. Cases, 622; *Brown* v. *City of Denver*, 3 Am. & Eng. Corp. Cases, 631. But as an original question it is obvious that all possible notice is given by the progress of the work itself, and under our system of laws every citizen is held charged with notice of the public law.

This question has been heretofore considered and decided by this court in the case of *Norfolk City* v. *Ellis*, 26 Gratt., 227, opinion of Staples, J., and should not now be considered an open question here. This court said in that case: " These assessments are not founded upon any idea of revenue, but upon the theory of benefits conferred by such improvements upon the adjacent lots. It is regarded as a system of equivalents. It imposes the tax according to the maxim, that he who receives the benefit ought to bear the burden, and it aims to exact from the party assessed no more than his just share of that burden, according to an equitable rule of apportionment." Judge Staples saying, speaking for the court: " My understanding has always been that if the mode of assessment is regular and constitutional, if the power to levy the tax exist in that class of cases, the courts are not authorized to interfere merely because they may consider the taxation impolitic, or even unjust and oppressive. In such case the remedy is in the legislature, and not in the judicial department. Cases without number might be cited in support of this principle. *People* v. *Lawrence*, 41 N. Y., 137 ; *Bank* v. *Billings*, 4 Pet., 514; *Langhorne* v. *Robinson*, 20 Gratt., 661, where the authorities are reviewed by Judge Joynes."

In the case before us it appears that the city council of Lynchburg, for the purpose of grading and paving its streets, has adopted the system of assessments by the front foot on lots adjacent to the street to be improved. The same system has been adopted in other towns and cities of the United States, and has been generally recognized by the courts as constitutional and valid. It is sustained by the highest courts in New York, Ohio, Michigan, Wisconsin, Missouri, California, Kansas, Connecticut, and Pennsylvania. Sedg. St. & Const. Law, 502–5, and cases cited in Cooley, Const. Lim., 507. *Railroad Co.* v. *City of Lynchburg*, 81 Va., 473. It must be held to be a settled principle in this State that such assessments, made under the authority of the public law, are valid

and binding, and whatever remedy is to be applied, if any, must come from the law-making power, and not from the courts. We cannot be unmindful of the salutary principle *stare decisis.* It follows that the judgment of the corporation court of Lynchburg is not erroneous, and the same will be affirmed.

JUDGMENT AFFIRMED.