# CHARLESTON.

## CITY OF PARKERSBURG v. TAVENNER et al.

### Submitted June 17, 1896—Decided Nov. 28, 1896.

1. STREET IMPROVEMENTS—CONSTITUTIONAL LAW—ABUTTING LOT
   OWNERS—ASSESSMENT FOR MUNICIPAL IMPROVEMENTS.
   An act of the legislature which authorizes a municipality to as-
   sess two-thirds the expense of paving a street and the whole ex-
   pense of constructing a sewer against the abutting property own-
   ers is constitutional and valid.

2. STREET IMPROVEMENTS—BILL TO ENFORCE ASSESSMENTS.
   It is only necessary, in a bill in equity to enforce such an as-
   sessment, to set out and allege a substantial compliance with the
   statute.

V. B. ARCHER for appellant:

I.—*Sections* 31 *and* 32 *of Charter of City, Acts of* 1889, *pp.* 48
*and* 49.

II.—*Municipal action and conditions precedent must be ob-
served.*—Cooley on Taxation (2nd Ed.) 656-7-8 9, notes
and cases cited.   2 Dillion Municipal Corp. (Fourth Ed.)
Section 811.

III.—*Municipal corporations must strictly comply with ordi-
nances.*—6 N. Y. 92.

IV.—*Where mode in which power of municipal corporation is
prescribed, the prescribed mode constitutes the power, and must
be followed.*—15 Am. & Eng. Ency. Law, 1042, and cases
cited in notes.

V.—*Power to make assessments rests, if at all, in council, and
can not be delegated.*—6 N. Y. 92; 75 N. Y. 388; 73 N. Y.
73; 15 Am. & Eng. Ency. Law, 1042-3.

VI.—*Constitutional provision giving power to assess and col-
lect taxes.*—Section 9 of Article X Const. of W. Va.

VII.—*Municipal authority means council.*—30 W. Va. 491.

VIII.— *Where advertisement for bids is provided for, no contract can be made without complying with this requirement.*— 15 Am. & Eng. Enc. Law, 1090-1; 10 Am. & Eng. Enc. Law, 293-4, and notes; 11 Am. & Eng. Corp. Cases, 309; 81 Am. Dec. 96, and notes at page 107.

IX.—*Police power.*—10 Am. & Eng. Enc. Law, 275.

X.— *The power to make street improvements, and make special assessments to pay therefor, can only be exercised under express authority.*—Elliott on Roads and Streets, 369, 370 and 371.

XI.—*Illinois Constitution of* 1848 *similar to Section* 9, *Article X, of W. Va. Const., held not to authorize Special Assessments.*—34 Ill. 203; 64 Ill. 427; 53 Ill. 33; 55 Ill. 133; New Const. Ill.; 62 Ill. 302.

XII.—*Power to make special assessments for sidewalks.*—39 W. Va. 75.

XIII.— *Virginia Constitution.*—16 S. E. Rep. 730.

XIV.—*Leading Case on special assessments.*—4 N. Y. 419.

XV.—*Criticism of New York rule by later decision.*—69 N. Y. 506.

XVI.—*Special assessments held to be exercises of power of eminent domain.*—34 Ill. 203.

XVII.—*Judge Dillon's Summary of Law of Special Assessments.*—2 Dill. Mun. Corp. (4th Ed.) 933.

XVIII.—*Tennessee Constitution.*—24 Am. Rep. 308.

XIX.—*There must be special authority to impose special assessments.*—Cooley on Taxation (2nd Ed.) 609.

XX.—*Pennsylvania rule as to local assessments.*—65 Pa. St. 146; 69 Pa. St. 352; 82 Pa. St. 360; 80 Pa. St. 505; 85 Pa. St. 163.

XXI.—*Rule in Illinois under Constitution of* 1848.—34 Ill. 277-8-9, 280, 281, 282, 283.

XXII.—*In reply to brief of counsel for appellee and generally.* —Acts 1889, c. 13, s. 31; Const. Art. III, ss. 9, 10; Const. Art. X, s. 9; Const. (U. S.) Am. XIV, s. 1; Cool. Tax. (2d Ed.) pp. 362-3-4; 154 U. S. 421; 23 S. E. Rep. 913, 914, 909; 19 Pa. 258; 36 Pa. 29; 44 Pa. 118; 69 Pa. 360; 24 N. J. 385; 18 N. J. Eq. 519; 35 N. J. 497; 50 Ill. 92; 62 Ill. 427; 11 Wend. 149; 41 N. Y. 123; 74 N. Y. 188-9, 184; 18 Fed. Rep. pp. 445-55; Welty, Ass't p. 286; 8 C. C. A. Rep. 398;

105 N. Y. 579; 83 Hun. (N. Y.) 146; 33 Kan. 156; 28 Cal. 345; 5 Ohio St. 243; 67 Am. Dec. 289; 10 Wis. 258; 4 Neb. 336; 22 S. E. Rep. 360; 26 Gratt. 227; Ell. Roads and S. 405; Bur. Tax. 475;Cooley Tax. 471, 472; 96 Ill. 255; 34 Ill. 203; 33 W. Va. 203, 794; 40 Ill. 211; 41 Ill. 306; 44 Ill. 91; 46 Ill. 44; 94 Ill. 604, syl. pt. 6; 39 W. Va. 75; 30 W. Va. 491, syl. pt. 2; 28 W. Va. 533, syl. pt. 1; 120 Ill. 269.

J. W. VANDERVORT and MERRICK & SMITH, for appellee.

J. W. VANDERVORT:

I.—*General Power.*—Dill. M. Corp. (4th. Ed.) § 761, Div. 6; § 572, 752 and 937 same; 26 Gratt. 224 &c.; 20 Gratt. 661; 31 Gratt. 571; 13 Gratt. 577; 25 Mo. 593; 78 Mo. 145; 54 Tex. 420; 41 Col. 545; 44 Pa. State, 113; 96 Pa. State, 140; 69 Pa. State, 352; 93 Pa. State, 15; 115 Pa. State, 445; 74 N. Y. 95; 40 N. J. L. 112; 31 Io. 718; Dill. M. Corp. 921; 30 W. Va. 504.

II.—*Constitutional Power.*—Dill. M. Corp. §§ 737, 760 b. same; 14 Gratt. 422; 120 Ill. 269; 9 W. Va. 165; 39 W. Va. 75.

MERRICK & SMITH:

I.—*Section thirty one of the charter of the City of Parkersburg (Ch. 13, Act* 1889) *is constitutional.—Section* 1, *Art. X, Constitution not applicable.*—9 W. Va. 162; 13 Gratt. 577.

II.—*If any constitutional provision applies it is s.* 9, *Art. X.* —Harrisville Case at page 166.

III.—*Local assessments not taxation within the meaning of the Constitution.*—Dill. Mun. Corp. §§ 748-750 and notes and cases there cited. Dill. § 587.

IV.—*Local assessments are constitutional.*—Dill. Mun. Corp. §§ 752-761 and notes; Authorities there collated; 39 W. Va. 75; 26 Gratt. 224; 31 Gratt. 571; 81 Va. 475; Cooley's Const. Lim. §§ 505-507 and notes, 4th Ed.; 4 N. Y. 410.

V.—*Not necessary that the benefit equal the assessment.*—26 Gratt. 224.

VI.—*Property not taken without due process of law and question of eminent domain not applicable.*—26 Gratt. 224; 81 Va. 861.

VII.—*In cases of doubt the Courts uphold legislative acts.*—14 Gratt. 422 at 425 *et seq.;* 6 Cranch 87; 5 Gratt. 518.

VIII.—*Constitution does not provide taxing power but limits it. If no prohibition no limitation.*—Cases cited last above.

IX.—*Before a court will declare a law unconstitutional it must be clearly shown to be unconstitutional beyond any reasonable doubt.*—6 W. Va. 562 at 574; 8 W. Va. 612; 36 W. Va. 84 at 95.

X.—*Compliance by the council with conditions and discretionary power.*—36 Pa. State, 62; 112 N. Y. 216 at 220.

XI.—*Council can employ agents.*—96 U. S. 341 at 348; 82 Va. 324.

XII.—*Where no discretion is conferred ordinance is valid.*—60 Ill. 441.

XIII.—*Power to vary plans to suit emergencies which may arise can be conferred by city council.*—96 Am. Dec. 311.

DENT, JUDGE:

Acting under its charter as amended by chapter 13, Acts 1889, the city of Parkersburg, through its council, paved a certain portion of its streets, and assessed two-thirds of the cost thereof against the abutting property owners; and also constructed a sewer, the whole cost of which was assessed to the abutting property owners in proportion to their frontage. The defendant was one of these property owners. Her assessment amounted to three hundred and nineteen dollars and fourteen cents for paving and fifty eight dollars and three cents for sewerage, which she refused to pay. The city thereupon, as authorized by its charter, brought suit to enforce the lien of such assessment against the defendant's property. She demurred to the bill. The demurrer was overruled, and, the defendant not denying the same by answer, a decree was entered upon the bill as taken for confessed as to her. From this decree she appeals, and relies on two principal causes of error, to wit: (1) That the charter, in so far as it permits local assessments for improvements, is unconstitutional; (2) that the council failed to comply with the provisions of the charter in making the improvements.

It is a very late day in the history of our jurisprudence to insist that the doctrine of local assessments for local improvements is inequitable or unconstitutional, for, as has

been well said, it is now as firmly established as any other
doctrine of American law, *Inhabitants of Palmyra* v. *Morton*,
25 Mo. 593; Dill. Mun. Corp. § 752.   This Court recognized
and adhered to the general doctrine on the subject, in so
far as the paving of sidewalks was concerned, in the case of
*Wilson* v. *Town of Philippi*, 39 W. Va. 75 (19 S. E. 553).
It is true that it is said in that opinion that: "In paving
the sidewalks after the grading is finished there can be lit-
tle difficulty in apportioning the expense in an equal and
uniform manner between the abutting lot owners; while in
grading and paving the street, where the ground is uneven,
and fills are required, it may often occur that the expense
of grading in front of one lot far exceeds that of grading
in front of the adjoining lots, which would render the prop-
er apportionment of the expense between the lot owners
uncertain and difficult;" and that this language has been
received as an intimation that this Court would establish a
different doctrine as to the paving of the street and side-
walks.   But an analysis of the language will show that the
distinction between the two does not refer to the paving,
but to the grading solely; for, after a street is graded, what
difference does it make whether the lot owner is required to
pave it for ten feet, and call it a sidewalk, or twenty feet, and
call it a street.   The proportionate expense to all the abut-
ting property owners is just the same, and is regulated ac-
cording to the number of square yards involved.   It is fur-
ther said in this opinion (page 84, 39 W. Va., and page 556,
19 S. E.):   "In view of the fact that the expense of putting
down a sidewalk after the grading and curbing are done
may be equally apportioned among the abutting lot owners
in proportion to their frontage, we can see nothing in our
statute which is repugnant to the clause of the Constitution
requiring that taxation shall be equal and uniform."   This
same language is applicable to the paving of streets where
they have been graded, and all that is left to be done is to
place the brick and sand thereon at so much a square yard.
Local assessments for local improvement do not depend on
the question of eminent domain or police regulations, but
belong strictly to the taxing power, for they are merely a
substitute for general taxation for the same public purposes,

as being more uniform and equitable in their bearing on persons and property. Therefore all that is said in argument about the doctrine of eminent domain has no bearing on the case under discussion.

The Virginia court of appeals has fully sustained the constitutionality of local assessment statutes. *City of Norfolk* v. *Ellis*, 26 Gratt. 224; *Langhorne* v. *Robinson*, 20 Gratt. 661; *Sands* v. *City of Richmond*, 31 Gratt. 571; *Davis* v. *City of Lynchburg*, 84 Va. 861 (6 S. E. 230); *Richmond & A. R. Co.* v. *City of Lynchburg*, 81 Va. 473. Judge Richardson, in a lengthy opinion in the case of *City of Norfolk* v. *Chamberlain*, 89 Va. 196 (16 S. E. 730) while he admits the firm establishment of the doctrine, attempts to refute the same as founded on illogical principles and unsound conclusions from fallacious reasonings. But therein he makes apparent an evident lack of knowledge as to the practical workings of municipal and other taxation, for he would make all improvements by general, and not local, taxation. The same doctrine, carried out to its full extent, would require the state to levy a general tax to open up and keep in repair all public roads, instead of the plan now universally adopted, and being extended, to require each neighborhood to open and keep in repair its own roads. The very object of local assessments is to produce uniformity and equality in taxation; and, while exact equality and uniformity can not be attained, owing to the imperfection of man's knowledge and experience, yet the doctrine of local assessment is the most equitable that has yet been devised by human ingenuity, and is far more just and satisfactory to individuals and the public, when rightly understood, than general taxation for the same purposes. In local assessments the expenditure goes directly to the improvement of the streets and betterment of the property in the assessed neighborhood, while in general assessments the money is expended on favored portions of the municipality, if not entirely dissipated or wasted before it reaches the improvement intended, far remote from the homes of the bulk of the taxpayers, who derive no benefit whatever from the improvement, but may be actually injured by it, as the property abutting thereon is made more desirable, and hence more valuable,

to the great detriment of other property not in any way affected by the improvement except to make it more undesirable in comparison.  The market value of the improved property is increased, while the market value of the unimproved is diminished.  Such is the frailty of human nature, that men intrusted with the expenditure of public moneys on public improvements ordinarily recognize it to be to the interest of the public to expend such money in local improvements which will benefit their private property and neighborhood, while other portions of the municipality must wait until they can succeed in electing one of their number to the responsible position of a dispenser of the public funds.  Local assessment acts are an attempt on the part of the lawmaker to provide against the degenerate administration of human government in favor of selfish interests.  Reduce the law under consideration to a contract, as all popular government, at least by legal fiction, is deemed to rise out of contract, usually called "compact." The citizens of a municipality as a whole say to the individual, "If you will bear the just expense of paving one-third of the street on which your property abuts and one-half the expense of constructing the sewer under the same, we will cause the street to be paved, and the sewer to be constructed, without further expense to you, and we will relieve you from contributing to two-thirds the expense of paving all the other streets and the whole expense of all other sewers within the municipality abutting or adjacent to all other property than your own." Without taking into consideration the local betterments, the relief from taxation is a full equivalent.  And the assessment is not required to be paid until the work is completed; thus affording the taxpayer the satisfaction of knowing that his money has not been misappropriated or wasted.  How much more uniform and equal such an assessment is than to have a general tax for street improvements levied year after year, to be squandered and expended, not through dishonesty, but through the inexperience and inability of human instruments, without any other than an injurious return to the taxpayer.  If there are any taxes that approximate uniformity and equality it is the assessments for local im-

provements, which pass almost directly with little or no expense for collection from the taxpayer into the very improvement for which they are levied.   The constitutionality of such laws is, therefore, beyond question, for they are not only equal and uniform in their operation, but they furnish a strong incentive to local improvement, and are thereby promotive of the public welfare.   It is possible there may arise cases in which such assessments would operate harshly on individuals.   But this is not shown to be such a case.

The position of the defendant that the allegations were not full enough to show that the plaintiff had complied with the requirements of the statute, is equally untenable. All that was required for the plaintiff to do was to allege that the work was done and the assessment made in pursuance of the statute, and it was not necessary to set out minutely every step taken by the officers of the municipality with regard to the work undertaken; but, if there was any necessary requirement omitted which operated injuriously to the defendant, she should have made this a matter of defense.   The bill sufficiently alleges that the work was performed in accordance with the statute; that a true estimate thereof was made and assessed under plaintiff's supervision against the property in controversy; that the defendant was the owner thereof, and liable for the payment of the assessment.   This she admits by her demurrer, and legally confesses by her failure to answer.   The remedy by bill in equity is a creature of the legislature, and is rather a concession to the taxpayer, as giving him a day in court to present any just defense he may have.   There is apparently no good reason why the defendant should not pay the assessment, and the decree is therefore affirmed.