THE CITY OF MOUNDSVILLE *v.* MARTIN BROWN *et al.*

(No. 9682)

Submitted April 3, 1945. Decided April 24, 1945.

604

*Martin Brown,* for appellants.

*Clinton Rogerson* and *Walter A. McGlumphy,* for appellee.

ROSE, JUDGE:

This suit was instituted by The City of Moundsville, a municipal corporation, to recover of "Martin Brown and W. Foss Curtis, Trustees for the Waiving Depositors of Marshall County Bank", certain assessments for the years 1940, 1941, 1942 and 1943, to be applied to the payment of "revenue bonds" issued by the municipality for the purpose of raising funds with which to pay fifty-five per cent of the expense of constructing a "municipal public works" consisting of the pavement of thirty-seven streets, or parts of streets, on some of which four lots belonging to the defendants abut, forty-five per cent of which expense was furnished by the federal "Public Works Administration".

The defendants filed a demurrer, a "plea in bar" and an answer to the bill of complaint. The plaintiff in turn filed a written demurrer to the "plea in bar" and to the answer of the defendants. Upon argument the court overruled the demurrer of the defendants and sustained the plaintiff's demurrer to the "plea in bar" and to the answer of the defendants; and, the defendants declining to make further defense, the court entered a decree against the defendants for the amounts claimed, decreed that, upon default in payment by the defendants, the lots should be sold. This appeal was awarded the defendants.

The bill of complaint alleges that all the requirements of chapter 68 of the Acts of the Legislature, 1935, relating to the construction of "municipal public works" as therein defined, and the establishment of rates and charges for

the use of and services rendered by such works, were complied with, and filed as exhibits certified copies of the records of the city in support thereof; and further alleges that: "During the course of operations necessary to the completion of said project, certain persons, owning property within the sphere thereof, instituted a suit in chancery in this court, praying that the completion thereof be restrained, injoined and inhibited"; and that: "The bill filed in said cause challenged and denied the validity of said ordinances, resolution, and the proceedings had thereunder"; that a demurrer to said bill was sustained and the bill dismissed, and that an appeal from the action of the court was refused by this Court, but exhibited only the final order of the trial court and the order of this Court refusing an appeal. The bill then alleges that: "The validity of the ordinances and resolution mentioned herein, as well as the proceedings had thereunder, were thereby determined in favor of the plaintiff"; and the adjudication of that cause "determined and settled 'the law of this case' which is final and conclusive as to all persons and property affected by said street paving improvements." The defendants, by their "plea in bar" and by their answer, in general terms, but comprehensively, allege that in a former suit by the plaintiff against them the same facts were alleged, the same relief sought, and that a demurrer thereto was sustained and an appeal therefrom refused by this Court; but they exhibit and quote nothing but the prayer of the bill and the final decree dismissing the bill.

In *Corrothers* v. *Sargent,* 20 W. Va. 351, this Court held that: "A decision upon a general demurrer to a bill, which has clearly gone to the merits of the case, is an effectual bar to further litigation; and where no formal defects appear upon the face of the bill the court will presume that the demurrer has gone to the merits."

But, the benefit of an alleged former adjudication cannot be pleaded informally or in general terms, nor as a mere conclusion of the pleader. To avail a party in later litigation he must show by his pleadings in the form of quotations or exhibits the complete and exact character of the

pleadings in the former suit or action, so that the Court, not the pleader, can say with complete certainty that the issues in the former case and later one are precisely the same, and that the exact issues sought to be determined in the later case have been, in fact, decided in the former suit or action. *Rigg* v. *Canterbury,* 116 W. Va. 303, 180 S. E. 182; *Bell* v. *Bell,* 84 W. Va. 307, 99 S. E. 450; *Riley* v. *Jarvis,* 43 W. Va. 43, 26 S. E. 366; *The Western M. & M. Co.* v. *The Virginia Cannel Coal Co.,* 10 W. Va. 250.

It is, therefore, clear that there is not a sufficient showing in the record, in either of the cases attempted to be pleaded by the plaintiff and the defendants respectively, to enable the Court, in the present case, to say whether the action of the court therein determined finally any issue now before the Court. We, therefore, cannot give either of these former cases further consideration.

Another simple principle must eliminate a considerable number of attempted defenses by the defendants. By section 6, chapter 68 of the Acts of the Legislature of 1935, under which this street paving was done, an ordinance providing for the construction of a "municipal public works" thereunder shall be "published once each week for two successive weeks in two newspapers of opposite political faith", together with a notice fixing a time and place at which "all parties and interests may appear before the municipal authorities, and may be heard as to whether or not said ordinance shall be put into effect." Section 17 of that chapter provides further that: "No such rates or charges shall be established until after a public hearing at which all the users of the works and/or owners of the property served, or to be served thereby, and others interested, shall have an opportunity to be heard concerning the proposed rates or charges"; and requiring publication of notice of such hearing to be made once each week for two successive weeks in two newspapers of opposite political faith. The exhibits filed with the bill show that these notices were published and that such hearings were held. The defendants there had an opportunity to raise their objections either to the under-

taking of the work or to the rates and charges to be established. Further, appropriate proceedings in court at that time on sufficient grounds would have been entertained to test the validity of the ordinance authorizing the work or that fixing the rates and charges. Instances of equitable relief awarded under such circumstances are too familiar to require citation. But the defendants appear to have done nothing whatever. They have stood by and permitted the bonds to be issued and sold, the improvements to be made, the proceeds of the bonds to be expended in payment therefor, and the rates for service to their lands to be established, all without protest or objection of any character. They can now be heard only on matters which, if established, would render the proceedings, either those having to do with the construction of the works or those establishing the rates, absolutely void. Irregularities and errors, and other like defenses, in the actions of the city council, connected with the authorization of the project, the construction thereof and the establishment of rates or charges thereunder, cannot now be resorted to by the defendants for relief against these assessments. In *City of Mannington* v. *Hamilton*, 104 W. Va. 656, 141 S. E. 527, we said, speaking by Judge Woods:

> "But, even if the form of procedure adopted had been irregular, the defendant cannot complain, as he seeks to do in his defense to this suit, after the work has been completed. He stood by and accepted the benefits arising from the expenditure of money necessary to pave and improve the street in front of his property. He must test the question of the validity of the city's action before the work is done. He is estopped to set up as a defense in this suit, against an assessment upon his property for such improvement, matters of which he had knowledge before the work was done and the money spent."

And in *Curry* v. *City of Kenova*, 112 W. Va. 241, 164 S. E. 249, Judge Lively said, speaking for the Court:

> "* * * It is uniformly held that where the sta-

tute provides a remedy against excessive, erroneous or improper assessments before some city authority, the party aggrieved must pursue that remedy before appealing to the courts for redress."

In the case of *Damron* v. *City of Huntington,* 82 W. Va. 401, 96 S. E. 53, it was held:

"One owning property abutting upon a street proposed to be improved by municipal authorities, and such improvement paid for by special assessments against the abutting property, knowing of facts which he contends makes a contract entered into between the city and a contractor for the improvement voidable, cannot escape payment of the assessment made against his property for the cost of such improvement by protesting to the authorities making the contract at the time it is made. He must, upon his protest being disregarded, test the question by injunction before the work is done, and if he does not do so he will be held to have waived any right he may have had to question the validity of the contract."

The benign equitable principle of estoppel confronts the defendants, except as to facts which would make the assessments against them, not merely erroneous or irregular, but void.

The defendants, however, take the position that the assessments against them are actually void because the paving of a street cannot be a "municipal public works" within the meaning of the Act of 1935. But section 1 of the act expressly provides that the term "municipal public works" shall be construed to mean, among other things: "* * * grading and/or paving, and/or re-paving streets and alleys, where such works or projects will be made self-supporting, and the construction and/or acquisition cost thereof, together with interest thereon, will be returned within a reasonable period, not exceeding thirty years, by means of tolls, fees, rents or charges other than taxation, and shall mean and include such system, building, plant or project in its entirety, and all integral parts thereof."

Municipalities have long had the power to pave streets, without cost to them, by making the projects self-liquidating through assessments against abutting property. Why cannot they liquidate fifty-five per cent of the cost by the same means? Section 17 of chapter 68 expressly provides that "rates or charges" may be established not only for the "use" of public works, but also for "services rendered" thereby. It cannot be questioned that a paved street renders a service to abutting property which would not be received from one not paved. In *The Duling Brothers Company* v. *The City of Huntington*, 120 W. Va. 85, 196 S. E. 552, we held that the protection afforded by a flood wall to real estate subject to inundation was such a service. The benefit of a paved street to abutting land is not less so. The city thus had jurisdiction of the subject matter, and its records, exhibited with the bill, show that it acquired jurisdiction of the defendants by publication of the statutory notice. Mere irregularities or other like defects in procedure can, at most, constitute only what, in a court of record, would be considered errors. The defenses based on such alleged irregularities are analogous to a collateral attack on a judgment, and cannot be entertained.

The defendants also say this suit cannot be maintained in the name of the city as plaintiff, since the city owned none of the bonds; but in section 17 it is expressly provided that "if any service rate, charge or fee so established shall not be paid within thirty days after the same is due, the amount thereof may be recovered by the board * * * in the name of the municipality * * *." They further say that, at most, the assessment can be only a lien on the abutting land without personal liability against its owners; but section 17 of the act provides that: "Municipal authorities shall have the power, and it shall be their duty, by ordinance or resolution, to establish and maintain just and equitable rates or charges for the use and services rendered by such works, to be paid by the person using the same or receiving the services thereof, * * *". The city's ordinance also so provides, and the defendants, as owners

of abutting lots, are "receiving the services" of the paved streets. *The Duling Brothers Company* v. *The City of Huntington, supra.* Further, the defendants rely upon the proposition that the project, before its construction, should have been submitted to a vote of the people of the city; but no such vote is required by said chapter 68 for the purpose of authorizing the construction of public works as therein defined, to be paid for by what is therein called "revenue bonds". Further, the defendants allege that they, being mere trustees holding these lots under some trust agreement, which is not exhibited or defined, cannot be made liable as such fiduciaries for a personal assessment. They cannot, of course, be liable personally for such an assessment, but no reason appears showing that they are not liable, in their fiduciary capacities, for such an assessment to be levied and paid out of the property and funds in their hands as such trustees. Nor is property held in trust immune against such an assessment. No statute creates such exemption, and no equitable or legal principle is cited which would so operate. Land held in trust is benefited and improved in value by the improved street precisely as any other. Trust property is subject to taxation precisely as any other, and assessments against such land for public improvements are a species of tax. The improvement and resulting assessment, therefore, do not depreciate or waste the trust property, but enhance its value. See *State* v. *City of Elizabeth,* 65 N. J. L. 483, 47 A. 455.

The answer further alleges that the ordinances exhibited with the bill contemplate that where any parcel of land fails to sell for enough to discharge the lien against it, any deficiency may be carried over against other lands and owners, and that this uncertainty as to the final amount for which the defendants and their lots may be held liable cannot now be determined so as to enable them presently to pay off and discharge their liability for assessments. It is sufficient answer to this attempted defense to say that no such pretended obligation against the defendants or their land is being asserted in this

suit. The only payments sought to be recovered are the original assessments for the first four years, without any pretended enhancement by virtue of deficiency over after the exhaustion of other parcels of land. If and when a claim is made upon the defendants for a deficiency arising from inability to collect in full assessments charged against owners of other lots, the defendants will be heard if they care to contest such liability.

We observe, however, the final decree appealed from provides that the plaintiff "recover of and from the defendants" the amount sued for. This is, in form, a personal decree against the defendants individually, and should be modified so as to provide that the recoveries shall be paid or made only from the property or funds in their hands as trustees. The direction for sale in default of payment also provides that the four several lots shall be sold "either as a whole or by separate parcels". This should be corrected so as to adjudicate that the four annual assessments against each lot, with interest, are liens against such lot, and to require the sale of each lot separately for the assessment against it. An assessment against one lot is not a lien against any other lot, and, if sold together, no means would exist by which the proceeds from a single lot could be ascertained.

The decree appealed from will be modified accordingly, and, as so modified, affirmed, with costs to the city.

*Modified and affirmed.*