ROBERT M. LA FOLLETTE

*v.*

THE CITY OF FAIRMONT, *et al.*

(CC 806)

Submitted April 21, 1953. Decided June 30, 1953.

518

BROWNING, JUDGE, not participating.

*Herschel Rose, Jr.*, for plaintiff.

*L. E. Johnson, Alfred Putnam*, for defendants.

LOVINS, JUDGE:

Robert M. La Follette, the plaintiff in this suit, seeks a declaratory judgment under provisions of Chapter 26, Acts of the Legislature, 1941, Regular Sesssion, seeking to test the validity of a paving assessment against his land. He brought this suit in the Circuit Court of Marion County, West Virginia; against the City of Fairmont, a municipal corporation, hereinafter referred to as "city"; Albert F. Robinson, James H. Hanway, Andrew C. West and William G. Meyer, who constitute the Board of Directors of that city, hereinafter designated as "board"; Fogle F. Earp, Norman Ward, doing business as Norman Ward & Co.; Chauncey Browning, as Attorney General of the State of West Virginia; and the unknown holders of paving assessment certificates issued by the City of Fairmont, West Virginia, pursuant to its Ordinance Number 222.

The plaintiff challenges the validity of Chapter 89, Acts of the Legislature, 1949, Regular Session, Ordi-

nances Numbers 213 and 222, passed by the board of the city, and seeks a declaration of his rights as against the defendants under the above statute and ordinances. The real attack made by the plaintiff is directed against the validity of a paving assessment made by the city against certain real estate owned by him.

The city, the board, Earp and Ward, jointly and severally, demurred to the petition of plaintiff, assigning numerous grounds of demurrer.

The trial court overruled the demurrer, and on the joint application of plaintiff and defendants, certified fifteen questions to this Court. The questions so certified are in the exact language of the grounds of demurrer, assigned by the defendants.

Plaintiff alleges that he is the owner of certain real estate situate on the north side of Fairfax Street in that city. The real estate owned by plaintiff abutts 232.5 feet on the northern line of Fairfax Street and extends in a northerly direction 200 feet to the southern boundary line of Michael Section to Coogle Addition. The northern boundary line extends a distance of 228 feet to the eastern line of Vermont Avenue in the City of Fairmont.

A dwelling house is situate on plaintiff land, which the plaintiff and members of his family have occupied as a residence, before and since the street was paved.

The defendants, members of the board of the city, constitute the governing body of said city; defendant Earp is a citizen of Fairmont and defendant Ward is a resident of the City of Pittsburgh, Pennsylvania.

The plaintiff and a number of other land owners, on or about the 21st day of August, 1950, signed and filed with the board a petition, requesting that the board permanently improve Fairfax Street and a number of other streets, by paving the same; and, that the cost of such improvements be assessed to the owners of land abutting on the streets so improved.

The proposed improvement, notices and other procedure were to be done under provisions of Chapter 89, Acts of the Legislature, 1949, Regular Session.

The board published a notice in a newspaper of general circulation, in accordance with provisions of Chapter 89, *id.* The notice fixed the 19th day of September, 1950, as the day for a special meeting when protests would be heard against the improvement.

In conformity with the statutory provisions, the notice specified that plans, specifications, profiles and estimates would be considered by the board at the special meeting. Notwithstanding the statement in the notice of such meeting, plaintiff alleges that no such plans, specifications or profiles relating to the permanent improvement of Fairfax Street were presented or considered by such board, and that the only data considered by the board was an informal written statement made by the City Engineer, showing the length of Fairfax Street as 610 feet, the various amounts of materials to be furnished and work to be performed, aggregating a cost of $8,-373.75; that the cost per linear foot, including curb, would be $9.18. Some of the owners of land abutting on other streets protested against the making of the improvements on other streets, and the board omitted the improvement of such streets, but the plaintiff and other owners of land abutting on Fairfax Street made no protest. Plaintiff avers that he believed the estimate of $9.18 per linear foot to be reasonable, and that he relied upon such estimate.

After the public hearing by the board, the Ordinance Number 213 was adopted on the 9th day of October, 1950, authorizing improvement of Fairfax Street, between Vermont Avenue and Marion Street. Other streets were included in Ordinance Number 213, but the improvement of those streets is not involved in this proceeding. That ordinance authorized the assessment of abutting land owners; directed the city engineer and

director of streets to advertise for bidders to do the work of improvement. Ordinance Number 213 set forth that plans, specification, estimates and profiles should show the proposed grade and sufficient data for any owner of abutting property to calculate approximately the proportionate part of the estimated cost which might be assessed against his property. The plaintiff denies the existence of such data and information and alleges that the statement in Ordinance Number 213, in respect thereto, is not true; that no plans, specifications, estimates or profiles, other than the data of the city engineer, were prepared.

After the adoption of Ordinance Number 213, there was an advertisement for bids to construct the improvement on Fairfax Street, between Vermont Avenue and Marion Streets, as well as other streets, such advertisement having been published October 13th and October 16th, 1950. Pursuant to the advertisement, two bids were received for performing the work on the various streets. Fogle F. Earp, being the lowest bidder, was awarded the contract for doing the work. The plaintiff alleges that the bids were for a total contract price, and were made on the unit cost basis; and that the contractor did not make any firm bid for the total amount to be paid for the work to be performed. In consequence thereof, plaintiff alleges that the owners of the land to be improved, under Ordinance Number 213, could not calculate or determine the cost of such improvement, or determine whether the bids were excessive.

The bid for doing work on Fairfax and other streets was awarded on November 6, 1950. The proposal of the contractor, Earp, and the acceptance by the city, was entered of record, which was the only contract between the city and the contractor for the improvement of streets covered by the proposal, including Fairfax Street. In the month of February, 1951, after the contract had been let, the city engineer prepared plans and profiles of said improvement, but did not prepare specifications.

During the month of May, 1951, the board relieved the city engineer of the duty of supervising the work, and employed an engineering corporation in his stead. The corporation so employed prepared complete plans, specifications and profiles for the improvement of said streets, such preparation having been completed on the _____ day of August, 1951.

The improvements consisted of certain excavation, filling, construction of concrete curb, and the construction of a stone base and asphalt surface thirty feet wide.

The engineering corporation made a report to the board, from which it was disclosed that the improvement above mentioned cost $16.325 per linear foot, and that the total cost to be assessed against plaintiff would be $3,795.56. The board, upon such report, gave notice that the assessment against various land owners would be made, including the assessment of $3,795.56 against plaintiff.

Plaintiff and other land owners appeared before the Board of Directors of the City of Fairmont on the 14th day of September, 1951, and filed a written protest, but instead of reducing such assessment, the board corrected the same and made an assessment against plaintiff of $3,950.15. A paving assessment certificate representing said assessment was issued against the land of plaintiff, containing the provisions with reference to installments, payment and time of payment, as required by the statute and Ordinance Number 222.

The paving certificate was delivered to the contractor, who transferred the same to persons unknown to the plaintiff, such holders being represented by defendant, Ward. The plaintiff however, does not know the holder of such certificate at this time. Plaintiff alleges that he has made no payment on the certificate, although requested to do so by defendant, Ward.

The assessment made, as above stated, has been certified to the Clerk of the County Court of Marion County,

and is now of record in such Clerk's Office in a Trust Deed Book, number and page not shown.

Plaintiff avers that there is an actual controversy between the plaintiff and defendants, and he now contends that the assessment so made against him is void. He sets forth the various grounds for his contention, which are summarized: That Chapter 89, Acts of the Legislature, 1949, is contrary to the provisions of Article III, Section 10 of the Constitution of this State, and the XIV Amendment to the Constitution of the United States of America; that Ordinance Number 213, is void for the reason that prior to the passing of said Ordinance, no plans, specification or profiles were considered by the Board, as required by Chapter 89, Acts of the Legislature, 1949, Regular Session; that Ordinance Number 222 is void for the reason that no plans, specifications and estimates of the cost of the proposed improvements were in existence before the awarding of the contract to Earp; that no plans, specifications and estimates of cost were in existence prior to advertising and letting of the contract for the paving of Fairfax Street; that the plans for the performance of the work were not approved by the board before advertising and letting of the contract; that the cost per linear foot is greatly in excess of the original estimate made by the city engineer on September 19, 1950; that the board refused to revise or correct the assessment so as to conform to the original estimate; that certificates in excess of the original bid were issued; and, that the assessment against plaintiff's property made under Ordinance Number 222, exceeds any special benefits conferred by the improvement.

Plaintiff makes the unknown holders of such certificates parties to this proceeding by reference and the former Attorney General of this State was made a party, for the reason that the constitutionality of the statute, under which the paving was done, is questioned.

The defendants who appeared assigned fifteen grounds of demurrer. The grounds of demurrer are set forth at

some length, and are somewhat argumentative; therefore, we deem it necessary to make a summary of the questions certified: (1) Does Chapter 89, Acts of the Legislature, 1949, Regular Session, violate Article III, Section 10, of the Constitution of West Virginia and the XIV Amendment to the Constitution of the United States of America? (2) Are Ordinance Numbers 213 and 222 invalid because of the failure of the municipal authorities to strictly comply with the statute? (3) Is the disparity between the data first prepared by the city engineer and the final cost of the improvement so great as to render the paving assessments void? (4) Is the plaintiff estopped by his conduct to question the validity of the paving assessment?

It is not amiss to say that certified questions should be so prepared that a concise answer to them may be made.

Plaintiff attacks the constitutionality of Chapter 89, Article 8, Acts of the Legislature, 1949, Regular Session. In considering this challenge, we bear in mind the attitude expressed by this Court on many occasions that a statute duly enacted by the legislature is presumed to be constitutional, and that it will not be declared unconstitutional unless clearly violative of some provisions of organic law. *Kimball* v. *Loughney,* 70 W. Va. 765, 74 S. E. 953. See *Lingamfelter* v. *Brown,* 132 W. Va. 566, 573, 52 S. E. 2d 687.

Coming to the exact point, the cases decided by this Court indicate that statutes similar to that here considered have been held to be a valid exercise of power, vested in the legislature. "An assessment by a city upon lot owners for cost of paving a street is not contrary to Amendment 14 of the National Constitution, or Section 10 of Article 3 of the State Constitution, either because the assessment is by the number of front feet of lots abutting on the street, or because there was no notice of such assessment to the lot owners." *Heavner* v. *City of Elkins,* 69 W. Va. 255, 71 S. E. 184. In the body of

the opinion in the *Heavener* case, at page 257, the following language is used: "The plaintiffs strongly urge that these assessments are void and contrary to such constitutional law, because the assessments were not made according to the benefits conferred upon each lot by the paving improvement, but by the frontage of the lots on the streets, that is, by the front foot. At one time it was a great question whether the assessment could be so made. Some state courts held that it could not be, but that the assessment must be measured by the benefits conferred on each lot. *Violett* v. *Alexandria*, 92 Va. 961. Such was the holding, as commonly construed, of *Norwood* v. *Baker*, 172 U. S. 269. But in *French* v. *Barber Asphalt Paving Co.*, 181 U. S. 324, that construction of the *Norwood case* was repudiated." See the case of *French* v. *Barber Co., supra.*

The constitutionality of an act similar to the one here considered was upheld in the case of *City of Parkersburg* v. *Tavenner*, 42 W. Va. 486, 26 S. E. 179. The statute under which the City of Fairmont acted does not violate Article III, Section 10, of the Constitution of this State, which reads as follows: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." The statute is likewise unobjectionable under the provision of the XIV Amendment to the Constitution of the United States, with respect to due process of law. It would unduly prolong this opinion and would serve no useful purpose to cite further authority or to engage in extended discussion of this question. Therefore, it suffices to dispose of this contention by saying that we hold that Chapter 89, Article 8, Acts of the Legislature, 1949, Regular Session, is a valid exercise of the constitutional power, possessed by the legislature of this state.

An examination of the statute in detail makes it clear that municipalities, such as the City of Fairmont, are empowered to pass ordinances similar to the two here considered, and since we have just held that the statute

under which the municipality of the City of Fairmont acted is valid, we now come to the questions raised by the contentions of plaintiff that no plans, specifications, profiles and estimates for the doing of the work were prepared until the work was practically completed. True, 89 *id.* Section 7, provides that plans, specifications and estimates of the cost of proposed improvements shall be prepared; that the purpose of such data is to show the proposed grade and sufficient data for any owner of abutting property to calculate approximately what proportionate part of the estimated cost thereof might be assessed against his property; and, that such data shall be filed with the clerk or recorder of the municipality and shall be open to the inspection of interested persons before advertisement of bids of contractors and before the meeting at which such bids may be accepted or rejected.

In the instant case, we are impressed with the following: That plaintiff herein was one of the property owners initiating, by petition, the action of the board in making the improvement; that Ordinance Number 213, passed in response to the prayer of such petition, being an ordinance of necessity for doing the work, recited that plans, specifications, estimates and profiles for paving the various streets, including Fairfax Street, had been prepared under the supervision of the city engineer and the director of streets for the City of Fairmont, and that such plans, specifications, estimates and profiles were on file in the office of the city clerk of the city.

Such recital amounts to a legislative finding of fact by the municipal authorities of the city. Though the legislative power of such city is limited, we think the statute grants to the municipality sufficient power for the board to act on legislative questions coming within the purview of the power so granted.

It was held in *Woodall* v. *Darst,* 71 W. Va. 350, 77 S. E. 264, that a fact determined by a legislative body, and made the basis for an act, is not thereafter open to judicial investigation. In *Avis* v. *Allen,* 83 W. Va. 789,

99 S. E. 188, a finding of fact by a city council to the effect that certain persons had signed a petition requesting the paving of a certain street in the town, and that the persons signing the petition owned property having a greater amount of front feet abutting upon the street to be paved, was conclusive and could not be questioned in a suit brought for the purpose of collecting the assessment.

Lest the principle just stated be thought to be contrary to other cases later decided, we distinguish between a finding of fact by a legislative body as a basis for legislative action, and a finding of fact involving a juristic question. *Cashman* v. *Sims,* 130 W. Va. 430, 43 S. E. 2d 805. The second point of the syllabus in the recent case of *State* v. *Thornburg,* 137 W. Va. 60, 70 S. E. 2d 73, reads as follows: " 'The courts cannot go into an inquiry as to the truth or falsity of facts upon which an act of the legislature is predicated, where the latter has sole jurisdiction of the subject'."

Indubitably, the Board of Directors of the City of Fairmont had exclusive jurisdiction of paving the streets of that city, as granted by Chapter 89, Article 8, Acts of the Legislature, 1949. Though alleged that such plans, specifications, profiles and estimates were nonexistent, and admitted on demurrer, we do not think that we can examine such questions. The instant proceeding in that aspect, constitutes a collateral attack upon a legislative finding by the board which finding constituted a basis for purely legislative action. Moreover, objections at that stage of the proceedings should have been made by the plaintiff, since he assisted in initiating the paving project. Furthermore, fraud, collusion or wrongdoing by reason of the alleged noncompliance with the statute were not alleged in the petition herein, unless the variance between the advisory estimate and the final estimate should be so considered. Treating the recitals in Ordinance Number 213, above mentioned, as a verity, the enactment of such ordinance was a substantial compliance with the statute.

Certainly, some of the property owners, among others affected by this paving project, including the plaintiff, protested under date of September 4, 1951, prior to the enactment of Ordinance Number 222, which is the ordinance fixing the amount of assessment to be made against the various lots and parcels of land abutting on the streets improved. But the land owners went no further than to protest. Ordinance Number 222 approved the engineer's report made on the _____ day of August, 1951, and found that the lots and parcels of land enumerated in such ordinance had been specially benefited by the improvements made. At the time of the protest, the work of paving had been completed, according to the allegation of petition.

Another reason advanced for the invalidity of the paving assessment is that no firm contract was entered into by the City of Fairmont and the contractor making the improvement. There is no merit in this contention. There having been a substantial compliance with the statute under which the paving was done, the contract is presumed to be sufficient, and, in the absence of fraud and wrongdoing, is reasonable. *Harrold* v. *City of Huntington,* 74 W. Va. 538, 82 S. E. 476; *Mannington* v. *Hamilton,* 104 W. Va. 656, 141 S. E. 527.

It does not clearly and manifestly appear, from the petition, that the assessment proceedings are void. The validity of such assessments and certificates is presumed. Of course, if the assessments in this case were void, a different rule may apply. See *Sleeth et al.* v. *City of Elkins,* 87 W. Va. 750, 106 S. E. 73; *Moundsville* v. *Brown,* 127 W. Va. 602, 609, 34 S. E. 2d 321.

There is considerable disparity between the original estimate or data prepared by the city engineer and the actual cost of the paving, and, had the plaintiff had no opportunity of keeping in touch with the paving as it progressed, it may have raised valid doubts whether the defendants had complied with the statute. The preliminary estimate however, was inaccurate, but a reasonable

margin for miscalculation should have been allowed. It was advisory only, and the plaintiff could have followed the work of paving as it progressed. See *Miller* v. *City of Portland,* (Or.), 151 P. 728.

It will be noted that Chapter 89, Article 8, Acts of the Legislature, 1949, is silent with respect to the restriction of the amount of assessment in excess of the preliminary estimate. A final and exactly accurate estimate was not necessary for awarding the contract for doing the work of improvement. *Kelley* v. *Morton et al.* (Mo.), 166 N. W. 840.

We do not, in the circumstances in this case, regard the disparity or variance between advisory data furnished by the city engineer at the inception of the paving project and the amount of assessment, as rendering the assessment and certificate void.

Again adverting to the fact that the plaintiff was one of the petitioners who initiated the paving of Fairfax Street, and that he resided, with his family, on that street, we think it was his duty to keep in touch with the proceedings and to make timely protest, or take other action as he thought necessary before the contract was let and the work completed. Adverting to what has been said relative to plaintiff's failure to act, and the fact that his residence was on Fairfax Street while the paving was being done, we are impressed with the contention of defendants that the plaintiff is estopped to attack the validity of the paving assessment at this late date.

The essential elements constituting estoppel are stated at length in the case of *Norfolk & W. R. Co.* v. *Perdue,* 40 W. Va. 442, 21 S. E. 755, 759. See *Fisher* v. *West Virginia Coal & Transp. Co.,* 137 W. Va. 613, 73 S. E. 2d 633, 640.

Plaintiff did not protest until after the work was completed. Prior to his protest, he made no effort to test his rights by suit or otherwise. He waived the validity of the assessment by so doing. *Damron* v. *City of Hunting-*

*ton et al.,* 82 W. Va. 401, 96 S. E. 53; *Werninger* v. *Stephenson,* 82 W. Va. 367, 376, 95 S. E. 1035.

The notice of filing of the petition herein was filed in the office of the Circuit Court of Marion County on the 26th day of May, 1952. Though the contract for doing the work was made on the 6th day of November, 1950, and the work of the improvement was completed on, or about the _____ day of August, 1951. Thus, it is seen that several months elapsed between letting of the contract, the completion of work of improvement and the commencement of this proceeding. The named defendants may have had knowledge of the attitude of the plaintiff toward the paving of Fairfax Street. But that attitude was, so far as is disclosed by the record, unknown to the holders of paving assessment certificates issued by the city.

A land owner against whose land a paving assessment has been made, who knows, or is put upon inquiry and should have known the cost of such paving; who makes no protest until long after the paving has been completed; and who does not avail himself of a legal or equitable remedy until long after the paving has been completed, is estopped from assailing the validity of a paving assessment, in the absence of fraud, wrongdoing, collusion and confiscatory action.

We think that this case presents a factual situation resulting in the plaintiff being estopped from attacking the validity of the paving assessment against his land. Those facts appear from the petition and render the petition demurrable. Upon the record before this Court, we think the paving assessment certificate against plaintiff's land, abutting upon Fairfax Street in the City of Fairmont, is valid. Therefore, the ruling of the Circuit Court of Marion County is reversed.

*Ruling reversed.*