(76 N. W. Rep. 235.)

---

R. T. ROLPH *vs.* CITY OF FARGO, *et al.*

Opinion filed June 4th, 1898.

**Local Assessments—Paving.**

> It is competent for the legislature to direct that all the expense of paving a city street shall be assessed against the abutting property in proportion to frontage.

**Amount of Assessment Not Limited by Increase in Value.**

> In exercising the power of local assessment, the legislature is not limited to the actual increase in value of the property assessed resulting from the local improvement.

**Constitutional Limitation.**

> Section 176 of the state constitution does not relate to local assessments, but only to general taxation.

Appeal from District Court, Cass County; *Pollock*, J.

Action by R. T. Rolph against the City of Fargo and A. T. Shotwell as city treasurer of said city, to enjoin the collection of, and to cancel special assessments levied on property of the plaintiff Rolph, in the City of Fargo, for the paving of Eighth street in said city.  Plaintiff had judgment, and defendants appeal.

Affirmed.

*Ball, Watson & Maclay,* for appellants.

The uniformity rule of taxation prescribed by section 176, constitution, does not apply to special assessments.  25 Am. and Eng. Enc. L. 504, n. 1, 495, n. 7.  The power of the legislature to provide for taxation and assessments, and to prescribe rules for

their apportionment is paramount and unquestionable, excepting in so far as it is restricted by the constitution. Cooley on Taxation, 32; *Spencer* v. *Merchant*, 3 N. E. Rep. 662; *Spencer* v. *Merchant*, 125 U. S. 345; *Sheley* v. *City*, 8 N. W. Rep. 52; *Winona Ry.* v. *City*, 44 N. W. Rep. 1072; *City* v. *Knowles*, 30 Pac. Rep. 1041; *Speer* v. *City*, 11 S. E. Rep. 802; *Emery* v. *Gas Co.*, 28 Cal. 346; *English* v. *Mayor*, 37 At. Rep. 158. The application of the front foot rule in paving cases has been generally recognized as just and equitable. Cooley's Const. Lim. 507; Cooley on Taxation, 151; 25 Am. and Eng. Enc. L. 524, n. 1; *Beaumont* v. *City*, 21 At. Rep. 888; *Haveland* v. *City*, 34 N. E. Rep. 679; *City* v. *Peace*, 14 S E. Rep. 521; *Davis* v. *City*, 6 S. E. Rep. 230; *Amery* v. *City*, 30 N. W. Rep. 780. Statutes similar to the one complained of in this case, have been enacted and approved in many of the states. *Quinchard* v. *Board*, 45 Pac. Rep. 856; *Gilcrest* v. *Macartney*, 66 N. W. Rep. 103; *City* v. *Hogan*, 32 S. W. Rep. 1014; *City* v. *Farrell*, 17 S. W. Rep. 497; *Rutherford* v. *Hamilton*, 11 S. W. Rep. 249; *City* v. *Bush*, 28 At. Rep. 926; *Hand* v. *Fellows*, 23 At. Rep. 1126; *Bryan* v. *Foley*, 47 N. E. Rep. 351; *Praigg* v. *Co.*, 42 N. E. Rep. 750; *Stuart* v. *City*, 45 Pac. Rep. 110; *State* v. *City*, 45 Pac. Rep. 122; *Board* v. *Murray*, 36 S. W. Rep. 180; Gen. Stats. Minn. 1894, § § 1116, 1119, 1247. Respondent is estopped from questioning the validity of the assessment. *Tone* v. *Columbus*, 39 Ohio St. 281; *Kellogg* v. *Ely*, 15 Ohio St. 64; *Tash* v. *Adams*, 10 Cush. 252; *Goodin* v. *Canal Co.*, 18 Ohio St. 169; *Ridwell* v. *City*, 85 Pa. St. 412; *Ross* v. *Stackhouse*, 16 N. E. Rep. 501; *Cluggish* v. *Koons*, 43 N. E. Rep. 158. The power to make and levy assessments includes the power to apportion them. Cooley on Taxation, 175; 25 Am. and Eng. Enc. L. 516; *Peo.* v. *Mayor*, 4 N. Y. 419.

*Chas. J. Mahnken* and *John E. Greene*, for appellants.

The judicial power cannot legitimately question the policy or refuse to sanction the provisions of any law not inconsistent with the fundamental law of the state. 25 Vt. 261; Cooley on Taxa-

tion, 43, 48; *Sheley* v. *Detroit*, 45 Mich. 432; *Cleveland* v. *Tripp*, 13 R. I. 50; *State* v. *Fuller*, 34 N. J. L. 227; *Erskine* v. *Nelson County*, 4 N. D. 72; *Swain* v. *Fulmer*, 34 N. E. Rep. 639; 2 Dillon Mun. Corp. 752. The rule of apportionment provided by section 2280, Revised Codes, instead of being contrary to constitutional direction is clearly a restrictive measure within the purview of article 6. *Bryan* v. *Foley*, 47 N. E. Rep. 351; *Palmer* v. *Stumph*, 29 Ind 329; *Neenan* v. *Smith*, 50 Mo. 525; *State* v. *Reiss*, 38 Minn. 371; Gen. Laws, Minn. 1891, Ch. 146; Statutes of Mo. 1889, § § 1939 1941; Gen. Laws, Ind. (Spec. Sess. 1865,) § § 66–67; Gen. Stat. Kan. § 32, p. 160. Where the legislature has directed that the cost of the improvement be assessed against the abutting property, it will be presumed that it has determined that the cost will not exceed the benefits. *Petition of Roberts*, 81 N. Y. 62; Cooley on Taxation, (2 Ed.) 661. The cost of the entire improvement may be apportioned to and assessed against abutting property. *Sheley* v. *Detroit*, 45 Mich. 431; *State* v. *Fuller*, 34 N. J. L. 227; *Gordon* v. *Coones*, 47 N. Y. 608; *Stone* v. *Cortes*, 38 S. W. Rep. 54; *Swan* v. *Fulmer*, 34 N. E. Rep. 639; *Magee* v. *Pittsburgh*, 46 Pa. St. 358; *Neenan* v. *Smith*, 50 Mo. 525; *Parker* v. *Challis*, 9 Kans. 155; *White* v. *Peo.*, 94 Ill. 604; *Galesburg* v. *Searles*, 114 Ill. 217; *Raleigh* v. *Peace*, 17 L. R. A. 330 and n. A sufficient notice and right of hearing is provided. Section 2279, Rev. Codes; *Hogar* v. *Reclamation Dist.*, 111 U. S. 701; *Tripp* v. *Yankton*, 74 N. W. Rep. 447; *Amery* v. *Keokuk*, 72 Ia. 701; *Clapp* v. *Hartford*, 35 Conn. 66. All doubts should be resolved in favor of the constitutionality of this statute. *Sweet* v. *Syracuse*, 129 N. Y. 316; Cooley's Const. Lim. (6th Ed.) 88.

*Newman, Spalding & Stambaugh*, for respondents.

The power to levy special assessmentↄ for local improvements is recognized but not created by the constitution. *Creighton* v. *Manston*, 27 Cal. 614; *Taylor* v. *Palmer*, 31 Cal. 241; *Peo.* v. *Lynch*, 51 Cal 213; *Peo.* v. *Hurlbert* 24 Mich. 87. The authority of the legislature over the subject extends only to restricting this power.

Constitution Art. 6. The power of levying special assessments must be exercised so as to produce equality and uniformity, and must proceed upon the principle of compensation to the property owner in special benefits in the enhancement of the value of his property by the improvement for which the assessment is laid and must be in proportion to and cannot exceed such benefits. Tiedeman Mun. Corp. § 259; *Peo.* v. *Mayor*, 4 N. Y. 425; *Chicago* v. *Larned*, 34 Ill. 203; *Snow* v. *Fitchbury*, 136 Mass. 183; *Agaway* v. *Hampdon*, 130 Mass. 528; *Seamans Friend Society* v. *Boston*, 116 Mass. 182; *Brayton* v. *Fall River*, 124 Mass. 97; *Downer* v. *Boston*, 7 Cush. 280; *Hascombe* v. *Omaha*, 7 N. W. Rep. 739; *State* v. *Patterson*, 5 At. Rep. 896; *Report of Commissioners*, 10 At. Rep. 363; *Gilmore* v. *Heutig*, 5 Pac. Rep. 781; *Denver* v. *Knowles*, 17 L. R. A. 142; *Creighton* v. *Manson*, 27 Cal. 621; *Taylor* v. *Palmer*, 31 Cal. 254; *Tide Water Co.* v. *Costen*, 90 Am. Dec. 641; *Nichols* v. *Bridgeport*, 23 Conn. 189; *Chamberlain* v. *Cleveland*, 34 Ohio St. 551; *State* v. *District Court*, 29 Minn. 62; *State* v. *Seymour*, 35 N. J. L. 49; *Dyar* v. *Farmington*, 70 Me. 515; *Martin* v. *Tyler*, 4 N. D. 303; *Barnes* v. *Dyar*, 56 Vt. 466; *State* v. *Newark*, 18 Am. Rep. 729; *Seeley* v. *Pittsburg*, 22 Am. Rep. 760; *Hammett* v. *Philadelphia*, 3 Am. Rep. 615; *Violet* v. *Alexandria*, 23 S. E. Rep. 909; *State* v. *District Court*, 33 Minn. 306; *Washington Avenue*, 69 Pa. St. 352, 8 Am. Rep. 255; *Thomas* v. *Gain*, 35 Mich. 155; *McBean* v. *Chandler*, 24 Am. Rep. 308; *Peo.* v. *Lynch*, 51 Cal. 15; *State* v. *Commissioners*, 20 Am. Rep. 380; *Johnson* v. *Milwaukee*, 40 Wis. 315; *In re Mead*, 74 N. Y. 221; *Petition of Roberts*, 81 N. Y. 67. Special assessments cannot be made a charge upon property other than that benefited, because based upon the theory of benefit to the property assessed. *Creighton* v. *Manston*, 27 Cal. 614; *Taylor* v. *Palmer*, 31 Cal. 241; *Neenan* v. *Smith*, 50 Mo. 525; *Crow* v. *Tolans*, 96 Ill. 255; *Wolf* v. *Philadelphia*, 105 Pa. St. 25; *Raleigh* v. *Peace*, 14 S. E. Rep. 525. The rule for apportioning the burden is to determine the value of the property benefited without the improvement and its value after the improvement, the difference is the limit to which such assess-

ment can justly extend. *Peo.* v. *Mayor*, 63 N. Y. 299; *Elwood* v. *Rochester*, 43 Hun. 121; Cooley on Taxation, (2d Ed.) 660. The determination of the value of the property before and after such improvement is in its nature a judicial power which can only proceed upon evidence and investigation of existing facts. If exercised by the legislature it must necessarily be by special legislation with reference to particular facts before that body and cannot be exercised by general legislation applicable to all localities. Dillon Mun. Corp. (4th Ed.) § 761; Cooley on Taxation, (2d Ed.) 661; *Raleigh* v. *Peace*, 14 S. E. Rep. 524; *O'Reilly* v. *Kingston*, 114 N. Y. 448; *Matter of Roberts*, 81 N. Y. 67; *State* v. *District Court*, 29 Minn. 62; *Percy* v. *Supervisors*, 37 Wis. 79. The restriction imposed by article 6, constitution, is in addition to that implied by the word "assessment." *Chamberlain* v. *Cleveland*, 34 Ohio St. 563. The statute is unconstitutional in that it affords no opportunity to be heard upon the question of the amount of benefits conferred or the justice of the assessment. *Stuart* v. *Palmer*, 74 N. Y. 183; *Brown* v. *Denver*, 3 Pac. Rep. 455; *Lent* v. *Tilson*, 14 Pac. Rep. 73; *Scott* v. *Toledo*, 36 Fed. Rep. 385; *Hagar* v. *Reclamation District*, 111 U. S. 707. The legislature must establish some rule within constitutional limits for the apportionment of the assessments on the lands benefited. *State* v. *Commissioners*, 9 Vroom. 193; *Barnes* v. *Dyar*, 56 Vt. 466. The constitutional provision is not self executing. *State* v. *Swan*, 1 N. D. 5. The only estoppel permissible as against an unconstitutional law is the active invocation of the law by the party against whom the estoppel is urged. *Greencastle* v. *Black*, 5 Ind. 559; *Matter of Van Buren*, 17 Hun. 527, 79 N. Y. 384; Fersons Appeal, 96 Pa. St. 140; *Town* v. *Perkins*, 94 U. S. 267; *Langworth* v. *Dubuque*, 13 Ia. 86; *Buell* v. *Ball*, 20 Ia. 289; *Town* v. *Stevenson*, 69 Mo. 379; *State* v. *Moberly*, 74 Mo. 167; *Counterman* v. *Township*, 38 Ohio St. 517.

CORLISS, C. J. The owner of abutting property is by this action attacking the validity of an assessment to pay the expenses of paving a street in the City of Fargo. He grounds his assault

thereon upon the alleged invalidity of the statute under which the assessment was levied. There is no claim made that, on account of irregularities, the tax assessed against his land is illegal. On the contrary, he expressly negatives in his complaint the existence of any defects in the proceedings themselves. It is not contended that the steps taken by the proper authorities were unauthorized by the law. But the broad proposition is laid down by counsel for plaintiff that the statute is void for the reason that it does not limit the total assessment upon property within the special taxing district to the actual benefit accruing to such district from the local improvement for which the tax is to be levied; and, further, that in the apportionment of the burden of this tax an arbitrary rule is to be applied, instead of the rule of actual benefits to each parcel of land assessed. Counsel for plaintiff insists that, as the total expense is to be levied upon the abutting property without reference to the question whether in fact such property is in the aggregate benefited to the full amount of such expense, therefore it is possible that such property may be called upon to pay a larger tax than the amount of benefit it receives from the improvement; and hence that, whatever rule of apportionment is adopted, each parcel of land may, and probably will, be subjected to a burden exceeding the benefit it receives from the work. Certain it is, they claim, that some of the property must inevitably pay more than an equivalent for the benefits received by it; and they therefore contend that, as this result may happen, the law under which such result is possible cannot be sustained. And, in the second place, they insist that, even if the total tax could in no case exceed the total benefits, yet, as the apportionment is not according to benefits, it follows that the taxpayer has no protection against the assessment of his land for a sum in excess of the actual benefit which accrues thereto from the local improvement for which such assessment is made. The statute which is assailed by this process of reasoning is section 2280, Revised Code, and it provides as follows: "Whenever any work or improvement mentioned in the preceding section shall

have been determined upon and the contract let therefor, the city
engineer shall forthwith calculate the amount to be assessed for
such improvement for each lot or parcel of ground abutting or
bounding upon such improvement.   And in estimating the assess-
ment he shall take the entire cost of such improvement and
divide the same by the number of feet fronting or abutting upon
the same, and the quotient shall be the sum to be assessed per
front foot so bounding or abutting, and said estimate shall be
filed with the city auditor and shall be presented to the city
council for its approval at the first meeting held thereafter.   The
city auditor shall cause said estimate of the city engineer,
together with a notice of the time and place when the council will
meet to approve of the same, to be published in the official news-
paper of the city for at least ten days prior to the meeting of the
city couucil to approve the same."

   That there is a line of decisions which more or less supports
the plaintiff's theory in this action cannot be doubted.   They
illustrate a tendency of the judicial branch of the government to
usurp power for the purpose of preventing injustice or hardship
in individual cases.   Such a course is indefensible.   If the courts
are to interfere whenever inequality in taxation is discerned, civil
government must cease.   What has led some of the tribunals to
adjudge illegal the exercise of this peculiarly legislative function,
when it has been applied to local assessments has been the
greater ease of tracing to the property assessed the benefit of the
improvement for which it is assessed.   The advantage which will
accrue to the citizen from the maintenance of public schools can-
not be even approximately measured in money.   But, when a
street is paved or a sewer constructed, it is possible to discover
some peculiar benefit to property in the immediate vicinity.   It
therefore seems to have been thought that because inequality
could be more easily pointed out in such cases, there was some
limitation upon the taxing power when exercised in this way
which does not exist when it is employed for purposes of general
revenue.   But it must be obvious that the fact that inequalities

are more readily discernible in one class of cases than in the other furnishes no reason for holding that the general theory of an equivalent in the form of benefits, as the basis of a tax, is any different in the former class of cases from what it is in the latter. When the taxpayer is called upon to contribute for general purposes, he is not permitted to challenge the legality of the tax on the ground that he has not received a pecuniary benefit commensurate with the sum he is required to pay. Whence comes the right of the courts to accord to him this peculiar privilege in cases of local assessment? It is right here that the fallacy of the cases which support the view of counsel for plaintiff lies. They differentiate, but on what principle it is impossible to discover, local assessments from general taxes. They admit that the question of benefits is only one of general theory when taxes are being apportioned for ordinary purposes. But straightway a new doctrine comes in play when the very same taxing power is exercised for an object which is as much public as the expenses of the administration of government. This doctrine has no foundation in reason, and it would never have been enunciated had it not been that it was more easy to discover particular hardships in cases involving local assessments, and had not the courts fancied that unless they intervened the property of the citizen was doomed to confiscation from the abuse of this power. What is it that distinguishes a local assessment from a general tax? Their points of resemblance are numerous. Each is an exercise of the taxing power, pure and simple. The burden is spread over a taxing district, and is apportioned according to some rule. The purpose for which the tax is levied is public. The general theory on which rests, in each case, the imposition of the particular burden upon the particular taxing district, is the benefit derived by the taxpayers therein from the application of the moneys so raised to the public purpose for which the tax is levied. It is because the law presumes a general benefit to the people of a particular district that it permits the tax to be levied upon that district. It is not because each taxpayer is supposed

to receive an exact money equivalent that he is required to pay. But, because the tax is one which pertains to that district, it therefore is levied thereon, to be apportioned in such manner as the constitution points out, if it speaks at all on the subject, or as the legislature directs, in case the fundamental law is silent. So, when a local assessment is levied, the question is not how much, in dollars and cents, each parcel of land has been enhanced in value by the local improvement, but what is the particular district which is, in a general sense, peculiarly benefited by the improvement; and, when this is once ascertained, then there remains only the question of the apportionment of the tax to be made in accordance with the constitution, if it regulates the matter, or as the legislature shall direct, when its discretion has not been limited by the organic law. The only marked point of difference between a tax and a local assessment is that the former is spread over a permanent taxing district, while the latter is to be collected from a special and temporary taxing district, created for that single purpose, because the benefit of the public improvement is so peculiarly local that to require all the taxpayers of the general taxing district to pay for it would be palpably unjust. The same general principles govern an exercise of the power of levying local assessments as apply to the exercise of the taxing power for general purposes. The object must be public. The tax must pertain to the district from which it is to be collected. One county cannot be taxed for erecting the public buildings of another. Nor can property on one street be assessed for the full cost of the improvement of another street. Some uniform rule of apportionment must be adopted, although the constitution may be silent on the point. If, for purposes of general taxation, an occupation is to be taxed, all within that class must bear the burden. If, in cases of local assessments, the front foot rule is to be applied, all in the same class must be treated alike. These are limitations in the exercise of the taxing power which inhere in the very nature of the power itself. When the legislature oversteps these boundaries, it is not exer-

cising the taxing power at all, but is guilty of an attempt arbitrarily to confiscate the property of the citizen.   But, when these limitations have not been violated, then the courts must look solely to the constitution for their authority in annulling a statute passed in the exercise of the taxing power, whether such statute relates to a general tax or a local assessment.   It is true that the legislature cannot by its fiat make that a local improvement which is not such an improvement in its essential nature.   But when it is once ascertained that the improvement is local in character, and that the property in the special taxing district may in a general sense be said to be peculiarly benefited thereby, it is for the legislature to determine how much of the expense of the improvement shall be collected from that district, and where the boundaries of that district shall be drawn, or it may delegate to a board or a public functionary the power to prescribe the extent of such district.   We cannot discover any foundation for those decisions which seem to hold that a local improvement may at the same time as to a portion of the expense thereof be not a local, but a general, improvement.   A local improvement is an entirety, and therefore cannot be divided.   What portion of the expense shall be borne by the special district, and whether all of it shall be collected therein, is a matter of legislative discretion. But the improvement itself is not affected by the decision the legislature may make.   It still remains local, although that body orders that a portion thereof shall be collected as a part of general taxes.  It is the fact that it is a local improvement which vests in the legislature the power to direct that it shall be paid for out of local property.   This power is not merely the power to order such portion to be collected in the special taxing district as shall be the exact equivalent of the enhancement of the value of property therein because of such improvement, but to direct that the expense of the improvement as an entirety be collected in a manner different from that in which ordinary taxes are collected.   If there is any power at all in the legislature to prescribe a distinctive mode of collecting the expense of such an improvement, it is

as broad as the purpose for which the tax is to be levied. The
courts cannot divide it up, and say at what point the power
ceases; cannot declare that as to any particular percentage of the
cost the only mode of levying taxes to discharge the same shall
be by general taxation. How could the courts ever determine
what part should be paid out of the general treasury and what
part raised by local assessment? What rule would govern them
in investigating such a question? And what right have they to
dictate where the line shall be drawn? If, as we believe, the
courts cannot require that any portion of the expense shall be
collected as ordinary revenues are collected, the whole ground
falls from under the postulate that the limit of the power of local
assessment is the enhanced value of the particular land assessed.
If this be sound law, then it follows that, as cases will arise in
which it will be true that the enhanced value of all the land
assessed will be less than the cost of the improvement, therefore
only a portion of the necessary funds can be raised by local
assessment; and yet in a great multitude of cases it has been held
that the lawmaking power can decide, subject to no review by the
courts, that the total cost shall be collected by local assessments,
without any reference to the question of the enhanced value of
all the property in the taxing district. In the case of *Spencer* v.
*Merchant*, 100 N. Y. 585, 3 N. E. Rep. 682, the legislature declared
that the property which had not paid the previous assessment
(the same having been adjudged void by the courts) should con-
stitute the taxing district in which the whole unpaid portion of
the cost of the local improvement should be collected. It is
true that the apportionment was to be according to benefits; but
there is a fundamental difference between apportioning according
to benefits a tax which exceeds the aggregate benefit, and assess-
ing each parcel of land to the extent of only the enhanced value
thereof because of the improvement. The legislation, sustained
in that case by both the New York court of appeals and the
Federal Supreme Court (125 U. S. 345, 8 Sup. Ct. 921,) was legis-
lation under which it was possible that each parcel of land might

have been assessed for many times the increase in value resulting from the improvement. And such legislation has been upheld with almost tiresome iteration. This theory that the tax can only be commensurate with the enhancement in value finds little support in the authorities, and it certainly rests upon no sound legal principle. It assimilates the power of local assessment to the power of eminent domain. It proceeds on the assumption that the hand which takes must also give back as much as it takes. This is true when the power of eminent domain is put forth. But it is never true, except in a vague sense, when the taxing power is employed. When the sovereign lays its grasp upon private property for a public purpose, the constitution commands it to make him compensation, because what is seized is in addition to his share of the public burdens. But, when it is a question how such public burdens are to be borne, the sovereign is under no obligation to return to him an exact, or even approximately exact, equivalent in money or property. While, in general theory, the citizen receives a benefit equivalent to the tax he is called upon to pay, yet it is common knowledge that this is a mere fiction, which is in conflict with the truth; and, of course, it is elementary law that the doctrine of benefit does not lie at the foundation of the taxing power, and that the citizen cannot escape a tax by showing that he receives no benefit in fact. A multimillionaire may be compelled to pay an ernormous school tax, although he has no child to be educated, and he may be required to bear the weight of heavy taxes for other purposes, although he should happen to be practically denied the protection of the laws by reason of the envy and hatred of which he may be the object because of his great wealth. The taxing power rests upon necessity, and not sentiment. If organized society were to wait for the means to support civil government until an ideally just system of taxation could be devised and put in successful operation, it must wait like the rustic who tarried by the river's bank for the stream to pass by. What is it that so differentiates the power of local assessment from the power of

general taxation that in one case the sovereign must give back in value all that is taken, while in the other it can, if necessary (unless there be constitutional checks,) take from the citizen all his property, without reference to his receiving in return any commensurate advantages or any benefit at all? Until this question is answered in favor of such a distinction, it is idle to talk of the enhanced value of the land assessed as the limit of the power of local assessment. When such an assessment is levied upon property for a particular improvement, a tax is as much collected as when the expense of the work is charged to the general tax levy. The only distinction is that the district is narrower, and the mode of apportionment different. Usually, too, only real property is considered in making the apportionment, and not all property, real and personal. In all other respects the two classes of cases are identical. The same power of taxation is exercised in each instance, and, except with respect to constitutional restrictions or inherent limitations, the legislative discretion is, in both classes of cases absolute. We have already referred to those limitations which inhere in the very nature of the taxing power. None of them affect the question before us. The assessment is for a public purpose. It pertains to the district within which it is to be collected, and it is apportioned according to a uniform rule. When we turn to the constitution for light, we find there no provision which relates to local assessments except the one which directs the legislature to restrict the power to make such assessments when exercised by municipal corporations. Section 130. The overwhelming mass of authority supports the view that the proper construction of the uniformity article in our constitution is that it relates exclusively to general taxation, and has no reference to local assessments. That section (section 176) declares that "laws shall be passed taxing by uniform rule all property according to its true value in money." We cite some of the decisions which hold that such a provision embraces only general taxation: *Hansen* v. *Hammer*, (Wash.) 46 Pac. Rep. 332; *Levee Co.* v. *Hardin*, 27 Mo. 495; *Emery* v. *Gas Co.*, 28 Cal. 345;

*Wallace* v. *Shelton*, 14 La. Ann. 498; *Goodrich* v. *Turnpike Co.*, 26 Ind. 119; *Edgerton* v. *Mayor, etc.*, 19 Fla. 140; *Motz* v. *City of Detroit*, 18 Mich. 495; *Hines* v. *City of Leavenworth*, 3 Kan. 186; *Daily* v. *Swope*, 47 Miss. 367; *Williams* v. *Cammack*, 27 Miss. 209; *Garrett* v. *City of St. Louis*, 25 Mo. 505; *Cain* v. *Commissioners*, 86 N. C. 8; *Hill* v. *Higdon*, 5 Ohio St. 243; *King* v. *City of Portland*, 2 Or. 140; *Hayden* v. *City of Atlanta*, 70 Ga. 817; *Violett's Heirs* v. *City Council of Alexandria*, (Va.) 23 S. E. Rep. 909; *Hilliard* v. *City of Asheville*, (N. C.) 24 S. E. Rep. 738; *Dorgan* v. *City of Boston*, 12 Allen, 223, 237; *Norfolk City* v. *Ellis*, 26 Grat. 224; *Richmond & A. R. Co.* v. *City of Lynchburg*, 81 Va. 473; *City of Raleigh* v. *Peace*, (N. C.) 14 S. E. Rep. 521. See, also, Cooley, Tax'n, pp. 626–636; 2 Dill. Mun. Corp. § 761.

To exhibit the folly of this rainbow pursuit of an ideal equality in the apportionment of a local assessment, it is only necessary to point to the injustice which it must be conceded the legislature may perpetuate in the collection of the expense of any local improvement. The cost of paving a street may be levied upon an entire city, and the millionaire who has his domicile therein may be compelled to bear a large portion of the burden, though he spends his time in foreign travel, and never even sets his foot upon the street. He may not own any land in the city which can be benfited by the tax, he being taxed there for only his personal property. When contrasted with the gross inequity of his contributing to the expense of improving the street,—an inequity which is constitutionally possible,—how paltry seems the grievance of the plaintiff in this suit, who is asked to pay for an improvement in front of his own lot only the same proportion of the expense thereof that is charged up to other abutting proprietors? We are apt to deceive ourselves by names and generalities. Because, forsooth, taxes must, under the constitution, be apportioned according to the value of property, it is thought that equality is approximated. But this is not true. It does not follow that one who owns ten times as much property as another receives a tenfold benefit from the government which taxes him. His investments may be made

in another jurisdiction, and therefore protected by other laws; and he may be indebted to foreign states, where he spends much of his time, for protection to his life and liberty. As has been hitherto stated, he may be required to pay largely in support of public education without a child to receive any benefit from the money thus expended. The only equality which our constitution attempts to guaranty is that all property owners shall be treated alike in the vaulation of their property. That the result of this system shall be equality in the distribution of the burdens of civil government the constitution does not pretend to say, nor could it truthfully make such a declaration. When the inherent defects of the valuation system as a means of equalizing the weight of taxation, are considered, and then, in addition, we contemplate the practical working of the system—the favoritisms, the errors, and the almost total failure to assess the citizen for his personal property at all,—it is no great stretch of the imagination, to say that more grievous wrongs are constantly perpetrated under that system than under almost any scheme of local assessment that can be devised. As before stated, the postulate that the assessment must not exceed the increased value of the property practically assimilates the power of local assessment to the power of eminent domain. The public must, on this theory, return to the citizen precisely what it takes from him. This is not taxation. Never has such a qualification of the taxing power existed under any form of government. The sovereign does not concern itself with the benefit which accrues to the taxpayer, but only with the necessities of the public treasury. It is true that certain limitations on the power inhere in its very nature. These we have already considered. Other restrictions are frequently found in the organic law. But, aside from these abridgments of the power, none of which affect the legality of the statute we are construing, the question of benefit resulting to any particular parcel of land has no bearing upon the problem whether the power of local assessment has or has not been constitutionally exercised.

There are two settled doctrines which are fatal to the proposi-

tion that the utmost scope of the power of local assessment is the actual increase in value of the property resulting from the improvement. One of these doctrines we have already considered. It has been applied in a great multitude of cases, and has seldom, if ever, been denied. It declares that the legislature may determine what portion of the cost shall be assessed against the local property, and may, if it deems best, direct that the total expense shall be collected in this way. Now, it is obvious that the cost of a local improvement may often exceed the consequent enhancement in value of the property benefited thereby. And it likewise may be the case that the proportion of the burden which the legislature may order to be collected by local assessment will be found to be in excess of the aggregate benefit accruing to the assessed property from the improvement. To sanction the act of the lawmaking power in ordering all or any arbitrary percentage of the expense to be raised by local assessment is necessarily to assert that more money made in this way be raised to pay for the work than the exact amount of pecuniary benefit which the assessed property receives by reason of the improvement.

The other doctrine refered to is that the assessment may be apportioned according to frontage. These decisions (and they are a host) are not sound if the limit of the power is the enhancement in value of the land assessed. It will not do to say that such a method of apportionment will result in approximately the same distribution of the burden as the mode of assessing according to benefits. When constitutional rights are involved, the courts will not suffer a single citizen to be harmed, though a million are fully protected under the system whose legality is challenged. Nor will the insignificant nature of the injury he receives weigh against his assertion of his constitutional rights. It is impossible that in every case the front-foot system should apportion the tax according to actual money benefits. We know that it will not. And yet practically all the courts, including those who indulge in much loose reasoning on this subject, agree that the taxpayer cannot complain when the frontage of his lot

determines the proportion of the total expense he must pay.
What, then, becomes of the postulate that the power of local
assessment is exhausted when the point of increase in value has
been passed? It is not difficult to conceive of a case where the
total cost will exceed the aggregate benefits, and where the
adoption of the front-foot basis of apportionment will still further
augment the disproportion, in individual cases, between the
amount of the tax and the actual advantage resulting to the lot
from the improvement. And yet in the supposed case the assess-
ment must, under nearly all the adjudications, be sustained. We
ask again, with emphasis, what becomes of the doctrine contended
for by counsel for the plaintiff under such a conditon of the law?
The courts of Pennsylvania have in their reasoning, as well as by
the general trend of their decisions, gone further in supporting
the notion of actual benefits than the tribunals of any other state;
and yet the Supreme Court of that state has held in a recent case
that the fact that a lot is not benefited, even when coupled with
the further fact that the assessment exceeds the value thereof,
will not render the assessment void. *City of Harrisburgh* v.
*McCormick*, 129 Pa. St. 213, 18 Atl. 126. In this case the court
said: "It may be that the front foot rule is not the best that
might be devised for the assessment of street improvements in
cities upon abutting property, but for the present it is the only
one we have; and, while it has been held that it cannot be applied
to farm lands, it has nowhere been decided that it is not applica-
ble to city property. It is perhaps impossible to frame any
general rule that would produce exact uniformity and do equal
justice in all cases. This arises from the fact that a rule, to be
valid must be general; and the further conceded fact that, in the
application of all general rules, there will be cases of individual
hardship. This would appear to be one of such cases. The lot
against which this assessment was filed consists of a long narrow
strip, with a front of several hundred feet upon the street, and
only 31 feet deep at one end, and narrowing to the other. The lot is
said not to be worth the amount of the assessment against it. If

this be so, it does not affect the validity of the law under which the assessment was filed." And in *City of McKeesport* v. *Busch*, (Pa.) 31 Atl. 49, the early reasoning of that court in the *Hammet Case*, 65 Pa. St. 146, the *Washington Avenue Case*, 69 Pa. St. 352, and the *Seeley Case*, 82 Pa. St. 360, is very much broken down. In this case (*i. e. McKeesport Case,*) the court said: "We can discover no good reason for holding that the front-foot rule does not apply. The act of 1867 especially enjoins it, and objections to its application, growing out of inequalities of the surface, which seem to make some cases harder than others, are not fundamental, so as to make the rule inapplicable on that account. It may well be that the improvement is less valuable to some owners than to others and that the burden of payment is more oppressive to some than to others, but that consideration cannot suffice to change the application of the rule."

In *Michener* v. *Philadelphia*, 118 Pa. St. 535, 12 Atl. 174, the court sustained a sewer assessment without reference to the question of benefits. The sewer was laid along the street bounding the side of the lot, the lot being a corner lot running through from one street to the other. There was already a sewer at each end, so that the lot could not possibly have been benefitted by the last improvement. It had been already assessed twice before for similar improvements, and these assessments had been paid. The court said: "The plaintiff alleges, however, that his property is not benefited by the sewer. He may or may not be mistaken in this. We cannot say. But this is a species of taxation, and all taxation is presumed to be for the benefit, directly or indirectly, of the taxpayer or his property. Laid as taxes are, under general laws, there will always be cases of apparent individual hardship. The childless man may claim that the taxes which he is compelled to pay for the education of the children of other persons confers no benefit upon him. The law does not so regard it. Education produces a higher degree of intelligence, the fruits of which are seen in increased good order and dimin-

ished crime. When a man comes to pay his general taxes he cannot be permitted to allege that he derives no benefit therefrom. And it would be intolerable if, in every instance of special taxation, the question of benefits could be thrown into the jury box. It would introduce into municipal government a novel and dangerous feature. It would substitute for the responsibility of councils, limited though it be, the wholly irresponsible and uncertain action of jurors. It is better 'to endure the ills we have, than fly to those we know not of.' "

In the *Madera Irrigation Dist. Case*, 92 Cal. 296, 28 Pac. Rep. 272, 675, the court say, at page 328, 92 Cal., and page 280, 28 Pac. Rep.: "It is not necessary to show that property within the district may be actually benefited by the local improvement, and, even if it positively appear that no benefit is received, such property is not thereby exempted from bearing its portion of the assessment, nor is the act unconstitutional because it provides that such property shall be assessed. Property that is exempt from taxation has always been held subject to the burdens of assessment for local improvements, and property within a district that is not susceptible of receiving any immediate benefit from the improvement is nevertheless so indirectly benefited thereby that it must bear a portion of the burden. If, within the limits of a levee district, a parcel of land should be so situated as not to require the protection of the levee, that would be no reason for excluding it from its share of the expense; or if, within the limits of a drainage district, there should chance to be found a cliff, that would be no reason for exempting it from assessment."

We are referred to the decision of the Michigan Supreme Court in *Thomas* v. *Gain*, 35 Mich. 155. But Judge Cooley expressly limited the decision to the peculiar facts of that case. See page 164. And in his work on taxation, (page 622,) he says: "For this very reason the power to determine when a special assessment shall be made, and on what basis it shall be apportioned, is wisely confided to the legislature, and could not, without the introduction of some new principle in representative

government, be placed elsewhere. We dismiss this topic, therefore, with the single remark, that with the wisdom or unwisdom of special assessments, when ordered in cases in which they are admissible at all, the courts have no concern, unless there is plainly and manifestly such an abuse of power as takes the case beyond the just limits of legislative discretion." All that was held in the case cited was that the legislature had not in fact honestly exercised the discretionary power of apportionment in distributing the burden of the tax. And Judge Cooley declares in the very case relied on (*Thomas* v. *Gain*, 35 Mich. 161:) "It is admitted that the legislature may prescribe the rule for the apportionment of benefits, but it is not conceded that its power in this regard is unlimited. The rule must at least, be one which it is legally possible may be just and equal as between the parties assessed. If it is not conceivable that the rule prescribed is one which will apportion the burden justly, or with such proximate justice as is usually attainable in tax cases, it· must fall to the ground, like any other merely arbitrary action which is supported by no principle."

The *Tide-Water Company Case*, 18 N. J. Eq. 518, is cited by counsel for plaintiff, but is plainly distinguishable from the case at bar, and this fact has been pointed out by the courts of that state. See *State* v. *Fuller*, 34 N. J. Law, 227, 230. While there are decisions in that state which favor the contention of plaintiff's counsel, yet in the *Fuller Case*, 34 N. J. Law, 227, language was used which fully supports our views. See pages 229 to 232.

The general theory upon which particular taxes are collected within particular districts is the theory of local benefit. It is precisely the same theory which underlies the law relating to local assessments. As one improvement is of local benefit to a county, and another to a city, and still another to a school district, so other improvements, such as sewers, water mains, and street paving, are of local benefit to a yet more circumscribed area. The taxpayers of a county are required to pay for erecting the public buildings thereof, because such structures are presumed to be for

their peculiar advantage in contradistinction from all other tax-payers within the state. And this is true with respect to the public buildings of a city and the school house of a school district. And, when another class of public works is undertaken, —a class to which street paving belongs,—it is competent for the lawmaking power to declare that these works are especially beneficial to a district smaller than that in which they are established; for instance, a district co-extensive with the abutting property. But when the taxing power is thus exercised no new principle is introduced into the law of taxation. It is only the extension of an old principle to peculiar circumstances. It still remains true that the ground upon which such an exercise of the power rests is the local benefit to the particular district within which the tax is to be collected. The legislature wields as broad a power in the one case as in the other. In each case it can fix the limits of the taxing district, and in each case it can, save as restrained by the constitution, select the subjects of taxation and establish the basis of apportionment. *In re Madera Irr. Dist.*, 92 Cal. 296, 28 Pac. Rep. 272, 675, the court say, at page 326, 92 Cal., and page 279, 28 Pac. Rep.: "It is, however, for the legislature to determine how the apportionment shall be made; and, while it is held that an apportionment of the expenses for a local improvement is to be made according to the benefits received by the property assessed, yet the power to make such apportionment rests upon the general power of taxation, and the apportionment itself does not depend upon the fact of local benefit in any other sense than that all taxes are supposed to be based upon the benefit received by the taxpayer." And in *Lent* v. *Tillson*, 72 Cal. 426, 14 Pac. Rep. 71, the court say at pages 427 to 429, 72 Cal., and page 80, 14 Pac. Rep.: "But the power to assess for local benefits is not based upon the fact of local benefit in any other sense than all taxes are based upon supposed benefit to the taxpayer. The power of taxation is said by Chief Justice Marshall to be vested in the government by all for the benefit of all. 'The state taxes are based upon the theory that all are benefited

by the government which they are designed to support. And so of county and municipal taxation. And the legislature may also organize smaller or different districts than these usual political subdivisions, and place upon such districts the burden of taxation for purposes in which the inhabitants have a special interest, or which will specially benefit the property within the district.' Now, in regard to general taxation, if a case were presented in which we could plainly see that the tax was not for the benefit of the government; but was wholly for the private advantage of an individual, we should not hesitate to declare that it was not an exercise of legislative power, and the levy would be held void. The same rule, and no other, applies to assessments for local improvements. The main practical difference between assessment for a local improvement and general taxation seems to be that in general taxation it is difficult, and generally impossible, for the court to say that the purpose of the tax is not a public purpose, or that no benefit will result to the taxpayers, while in local assessments it is more often easy to see that the improvement will not be a special benefit. Still the benefit is not the source of the power. That is inherent in the government, and is only limited by express or implied limitations found in the constitution, or by its own nature and purposes. Within these limits the legislature is the sole judge of when and to what extent the power shall be used. It may be said that all the cases on this subject are exceptional, and many of them are cases of great hardship and clear extortion, in which the local benefit claimed is only a pretense to cover the unjust exaction, and the courts have often attempted to find some limitation in the nature of the power which would enable them to prevent the injustice. Thus, it has sometimes been said that the power, being based upon the supposed benefit, may be inquired into whenever the attempt is made to enforce the tax; but this, obviously, cannot be so. The legislature must act, after all, in providing for the public good, upon the judgment of its members as to what is expedient or will prove beneficial. The most wisely planned projects often fail to

realize the good expected. And then the benefits need not be immediate. I see no just limitation in this respect, except that the tax will not be upheld when the courts can plainly see that the legislature has not really exercised this judgment at all, or that manifestly and certainly no such benefit can or could reasonably have been expected to result. The judge should not place his mere opinion against that of the legislature."

While it is true that it is not competent for the legislature to compel the taxpayers of one county to pay for the public buildings of another, yet it may indirectly accomplish this result at any time by making the former county a part of the latter. This may be done after the debt has been incurred. And it is likewise true that the limits of the taxing district within which the expense of such structures must be collected may be narrowed by a division of the county into two counties, leaving all the burden of taxation for existing indebtedness to be borne by the fragment in which the buildings stand. *Johnson* v. *City of San Diego*, (Cal.) 42 Pac. Rep. 249, and cases cited; *Petition of Kingman*, 153 Mass. 566, 573, 27 N. E. Rep. 778, and cases cited. Nor does the law so limit the power of the legislature to tax for such an improvement that only those who are in fact benefited thereby can be required to pay. The childless nonresident owner of land in a city, who never beholds the county or city buildings or the school houses therein, must nevertheless contribute to the cost of them all. And so with respect to a work that is still more local in character. When once the boundaries of the special taxing district have been established, it is utterly unimportant that a particular piece of property happens to be so situated that no benefit can accrue to it from such work. Of course, this reasoning would not apply if a distant lot should be capriciously included within the district. But it does apply when all the property is similarly situated with reference to the improvement, as, for instance, when it is all abutting property. When the property belongs to a class that may be benefited, it is no objec-

tion to its being placed within the taxing district that, because of exceptional reasons, it is not benefited in fact.

It is said that practically all the cases which sustain the front-foot basis of apportionment are cases in which the legislature was dealing with a particular city; and it is urged that there is plain distinction between a special law relating to a single city and a general law which embraces all municipalities. We are unable to discover any such distinction. The question is one of power. Can the legislature determine that the abutting property will be benefited to the extent of the cost of paving a street, and that the property shall be assessed according to its frontage? If it can, then it is immaterial whether it establishes such a rule for all cities or for only one. We know of no principle which permits a court to deny to a co-ordinate branch of the government the right to exercise a conceded power because it may surmise that the power has been exercised without due consideration of the facts. Besides it is absurd to assume that the legislature ever takes into consideration the varying topographical conditions and other relevant circumstances when it authorizes a large city to levy local assessments by the front foot rule for local improvements. It is impossible for that body to consider in advance the effect of such improvements upon abutting property under every conceivable circumstance. It often happens that when such laws are passed much territory that is subsequently included within the city limits is not then within its borders. Counsel's argument proves too much. It strikes at the power of the legislature to establish the front-foot rule at all in a large city, or even in any city with respect to territory which may be thereafter annexed. We have thus far refrained from grouping around the several propositions, which support our decision that the limit of the power is not the enhanced value of the particular land assessed, those cases which sustain such propositions. This course has been pursued that the continuity of the argument might not be broken. To recapitulate, we assert that the decisions which recognize the front-foot rule are fatal to the theory that the public can

take in the form of a local assessment only what it has already given in the form of increased value.   We cite a few of the numerous decisions:     *Seely* v.  *City of Pittsburgh*, 82 Pa. St. 360; *Washington Ave. Case*, 69 Pa. St. 352; *Hammet* v. *Philadelphia*, 65 Pa. St. 146; *City of McKeesport* v. *Busch* (Pa.) 31 Atl. Rep. 49; *City of Harrisburg* v. *McCormick*, 129 Pa. St. 213, 18 Atl. Rep. 126; *Witman* v. *City of Reading* (Pa.) 32 Atl. 576; *City of Philadelphia* v. *Tryon*, 35 Pa. St. 401; *Emery* v. *Gas Co.*, 28 Cal. 345; *Hilliard* v. *City of Asheville* (N. C.) 24 S. E. Rep. 738; *Mayor, etc.* v. *Scharf*, 54 Md. 499; *Ulman* v. *Mayor, etc.* (Md.) 20 Atl. Rep. 141, 21 Atl. Rep. 709; *Mayor, etc.* v. *Scharf*, 56 Md. 50; *Alberger* v. *Mayor, etc.*, 64 Md. 1, 20 Atl. Rep. 988; *Mayor, etc. of Baltimore* v. *John Hopkins Hospital*, 56 Md. 1; *Moale* v. *Mayor, etc.*, 61 Md. 224; *Chamberlain* v. *Cleveland*, 34 Ohio St. 551, 558; *Railway Co.* v. *Connelly*, 10 Ohio St. 159; *Rutherford* v. *Hamilton* (Mo.) 11 S. W. Rep. 249; *Palmer* v. *Stumph*, 29 Ind. 329; *Norfolk City* v. *Ellis*, 26 Grat. 224; *Davis* v. *City of Lynchburg* (Va.) 6 S. E. Rep. 230; *City of Raleigh* v. *Peace*, (N. C.) 14 S. E. Rep. 521; *Allen* v. *Drew*, 44 Vt. 174; Cooley, Tax'n, 644.

Again, it is clear that those cases which sustain any other basis of apportionment than that of actual benefits to each parcel of land,—as, for instance, value or area,—are likewise hostile to the narrow rule for which counsel for plaintiff contends.   We refer to a few of the authorities which uphold such modes of apportionment:   *In re Madera Irr. Dist.*, 92 Cal. 296, 324, 28 Pac. Rep. 272, 675; *Burnett* v. *Mayor, etc.*, 12 Cal. 76; *Creighton* v. *Scott*, 14 Ohio St. 438; *Lockwood* v. *City of St. Louis*, 24 Mo. 20; *Keese* v. *City of Denver*, 10 Colo. 112, 15 Pac. Rep. 825; *Gilmore* v. *Hentig*, 33 Kan. 156, 173, 174, 5 Pac. Rep. 781; *Wright* v. *City of Boston*, 9 Cush. 233; *Downer* v. *City of Boston*, 7 Cush. 277; *Strowbridge* v. *City of Portland*, 8 Or. 67, 82; *Snow* v. *Fitchburg*, 136 Mass. 183; *Williams* v. *Cammack*, 27 Miss. 209; *Levee Co.* v. *Hardin*, 27 Mo. 495; *Wallace* v. *Shelton*, 14 La. Ann. 498; *Daily* v. *Swope*, 47 Miss. 367; *Irrigation Dist.* v. *Bradley*, 164 U. S. 112, 176, 17 Sup. Ct. 56; *Walston* v. *Nevin*, 128 U. S. 578, 9 Sup. Ct. 192; *Cleveland* v. *Tripp*, 13 R. I.

59; *Davidson* v. *New Orleans*, 96 U. S. 106; *Bishop* v. *Tripp*, (R. I.) 8 Atl. 692; *Dorgan* v. *City of Boston*, 12 Allen, 223; *Richmond & A. R. Co.* v. *City of Lynchburg*, 81 Va, 473; *Hagar* v. *Reclamation Dist.*, 111 U. S. 701, 4 Sup. Ct. 663; Cooley, Taxation, 648, 649.

There is another line of adjudications which are inimical to the views of counsel for plaintiff,—those which hold that the legislature may direct that all the expense of the improvement be collected out of the abutting property,—for it may happen that such expense will exceed the aggregate enhanced valuation of the property assessed which results from the local improvement. In this line we find the following decisions: *Lent* v. *Tillison*, 72 Cal. 404, 14 Pac. Rep. 71; *State* v. *Fuller*, 34 N. J. Law, 227; *Spencer* v. *Merchant*, 125 U. S. 345, 8 Sup. Ct. 921; *Bauman* v. *Ross*, 167 U. S. 548, 589, 17 Sup. Ct. 966, and cases cited; *Dorgan* v. *City of Boston*, 12 Allen, 223; *City of Parkersburg* v. *Travenner* (Va.) 26 S. E. Rep. 179. What is true of the foregoing cases is also true of those which assert the power of the legislature to fix the percentage of the cost of the work to be raised by local assessment, for such percentage may double the total increase in value because of the improvement of all the assessed property. We cite a few of those cases: *Bauman* v. *Ross*, 167 U. S. 548, 589, 17 Sup. Ct. 966, and cases cited; *Hilliard* v. *City of Asheville* (N. C.) 24 S. E. Rep. 738; *City of Parkersburg* v. *Travenner* (Va.) 26 S. E. Rep. 179; *Norfolk City* v. *Ellis*, 26 Grat. 224.

Again, those cases which hold that the total cost of the improvement in front of a particular lot may be assessed against it are opposed to the doctrine of actual benefits. *Weeks* v. *City of Milwaukee*, 10 Wis. 258; *Warren* v. *Henly*, 31 Iowa, 31.

In Michigan, the judges were equally divided on the question. See *Woodbridge* v. *Detroit*, 8 Mich. 274. And, while Judge Cooley is opposed to the rule established by the Wisconsin and Iowa courts (See Cooley, Const. Lim. 508), yet Judge Dillon, whose opinion is so much relied upon by counsel for plaintiff in this case, favors that rule. See 2 Dill. Mun. Corp. § 753.

And, finally, we marshal against counsel's theory those decisions

which attach no importance to the fact that the land, so far from being enhanced in value by the improvement, has not been benefited thereby at all. *City of Harrisburg* v. *McCormick*, 129 Pa. St. 213, 18 Atl. Rep. 126; *Michener* v. *Philadelphia*, 118 Pa. St. 535, 12 Atl. Rep. 174; *Dewey* v. *City of Des Moines* (Iowa) 70 N. W. Rep. 605; *Warren* v. *Henley*, 31 Iowa, 31; *McQuiddy* v. *Smith*, 67 Mo. App. 205. In this last case the court said : "To pay for such grading, too, the city is authorized to assess against the abutting real estate the cost thereof. It is true that the basis of this authority to charge the adjacent property is the supposed benefit conferred on this particular property. ' But,' as stated by a well known text writer, ' this compensation received in benefits does not differ in principle from the compensation received, or supposed to be received, for general taxes, and is often a myth in fact, in the one case as in the other.' Lewis, Em. Dom. § 5. So, then, it is no defense to this tax bill that the property of these defendants may, in fact, have been injured rather than benefited by the street grading."

In *Irrigation Dist.* v. *Bradley*, 164 U. S. 112, 17 Sup. Ct. 56, the court say,.at pages 176, 177, 164 U. S., and pages 69, 70, 17 Sup. Ct.: "It is insisted that the basis of the assessment upon the lands benefited, for the cost of the construction of the works, is not in accordance with, and proportion to, the benefits conferred by the improvement; and therefore there is a violation of the constitutional amendment referred to, and a taking of the property of the citizen without due process of law. Although there is a marked distinction between an assessment for a local improvement and the levy of a general tax, yet the former is still the exercise of the same power as the latter, both having their source in the sovereign power of taxation. Whatever objections may be urged to this kind of an assessment, as being in violation of the state constitution, yet, as the state court has held them to be without force, we follow its judgment in that case, and our attention must be directed to the question whether any violation of the federal constitution is shown in such an assessment. Can an *ad*

*valorem* assessment on the land benefited, or, in other words, can such an assessment as is provided for in §§ 18, 20, 21 and 22 of the act, be legally levied in such a case as this? Assumed that the only theory of these assessments for local improvement upon which they can stand is that they are imposed on on account of the benefits received, and that no land ought, in justice, to be assessed for a greater sum than the benefits received by it, yet it is plain that the fact of the amount of benefits is not susceptible of that accurate determination which appertains to a demonstration in geometry. Some means of arriving at this amount must be used, and the same method may be more or less accurate in different cases involving different facts. Some choice is to be made, and, where the fact of some benefit accruing to all the lands has been legally found, can it be that the adoption of an *ad valorem* method of assessing the lands is to be held a violation of the federal constitution? It seems to us clearly not. It is one of those matters of detail in arriving at the proper and fair amount and proportion of the tax that is to be levied on the land, with regard to the benefits it has received, which is open to the discretion of the state legislature, and with which this court ought to have nothing to do. The way of arriving at the amount may be in some instances inequitable and unequal, but that is far from rising to the level of a constitutional problem, and far from a case of taking the property without due process of law."

In *Bauman* v. *Ross*, 167 U. S. 548, 17 Sup. Ct. 966, the court say at page 590, 167 U. S., and page 982, 17 Sup. Ct.: " It was contended by some of the owners of lands that the public improvement proposed was not of a local character, but was for the advantage of the whole country, and should be paid for by the United States, and not by the District of Columbia, or by the owners of the lands affected by the improvement. But it is for the legislature, and not for the judiciary, to determine whether the expense of a public improvement should be borne by the whole state, or by the district or neighborhood immediately benefited. The case in this respect comes within the principle upon

which this court held that the legislature of Alabama might charge the County of Mobile with the whole cost of an extensive improvement of Mobile harbor, and, speaking by Mr. Justice Field, said: 'The objection urged is that it fastens upon one county the expense of an improvement for the benefit of the whole state. Assuming this to be so, it is not an objection which destroys its validity. When any public 'work is authorized, it rests with the legislature, unless restrained by constitutional provisions, to determine in what manner the means to defray its cost shall be raised. It may apportion the burden ratably among all the counties or other particular subdivisions of the state, or lay the greater share or the whole upon that county or portion of the state specially and immediately benefited by the expenditure.' *Mobile Co.* v. *Kimball*, 102 U. S. 691, 703, 704. The legislature, in the exercise of the right of taxation, has the authority to direct the whole, or such part as it may prescribe, of the expense of a public improvement, such as the establishing, the widening, the grading, or the repair of a street, to be assessed upon the owners of lands benefited thereby. *Davidson* v. *New Orleans*, 96 U. S. 97; *Hagar* v. *Reclamation Dist.*, 111 U. S. 701, 4 Sup. Ct. 663; *Spencer* v. *Merchant*, 125 U. S. 345, 355, 356, 8 Sup. Ct. 921; *Walston* v. *Nevin*, 128 U. S. 578, 582, 9 Sup. Ct. 192; *Lent* v. *Tillson*, 140 U. S. 316, 328, 11 Sup. Ct. 825; *Illinois Central R. Co.* v. *City of Decatur*, 147 U. S. 190, 198, 199, 13 Sup. Ct. 293; *Paulsen* v. *Portland*, 149 U. S. 30, 13 Sup. Ct. 750. This authority has been repeatedly exercised in the District of Columbia by congress, with the sanction of this court. *Willard* v. *Presbury*, 14 Wall. 676; *Mattingly* v. *District of Columbia*, 97 U. S. 687; *Shoemaker* v. *U. S.*, 147 U. S. 282, 286, 302, 13 Sup. Ct. 361. The class of lands to be assessed for the purpose may be either determined by the legislature itself, by defining a territorial district, or by other designation, or it may be left by the legislature to the determination of commissioners, and be made to consist of such lands, and such only, as the commissioners shall decide to be benefited. *Spencer* v. *Merchant* and *Shoemaker* v. *U. S.*, above cited; *Irrigation Dist.* v. *Bradley*, 164 U.

S. 112, 167, 168, 175, 176, 17 Sup. Ct. 56; *Ulman* v. *Mayor, etc.*, 165 U. S. 719, 17 Sup. Ct. 1001. See, also, the very able opinion of the Court of Appeals of New York, delivered by Judge Ruggles, in *People* v. *Mayor, etc.*, of Brooklyn, 4 N. Y. 419, 430. The rule of apportionment among the parcels of land benefited also rests within the discretion of the legislature, and may be directed to be in proportion to the position, the frontage, the area, or the market value of the lands, or in proportion to the benefits as estimated by commissioners. *Mattingly* v. *District of Columbia, Spencer* v. *Merchant, Walston* v. *Nevin, Shoemaker* v. *U. S., Paulsen* v. *Portland,* and *Irrigation Dist.* v. *Bradley,* above cited."

In *English* v. *Mayor, etc.* (Del. Err. & App.) 37 Atl. 158, the court say: "It is altogether too late in the development, both by legislation and elaborate judicial decisions, in states other than our own, of the general principles controlling local assessments for local improvements, for it to be necessary or proper for me to enter into a more elaborate or detailed review of the multitude of authorities sustaining the general propositions already laid down. It is well settled law (1) that the whole subject of taxing districts belongs to the legislature; (2) that the apportionment between the public and the local owners is within the power of the legislature; (3) that the legislature may fix upon the basis of apportionment between individuals. In fixing upon the basis of apportionment, the two methods between which a choice is commonly made in statutes providing for local assessments are: (1) An assessment made by assessors or commissioners appointed for the purpose under legislative authority, who are to view the estates, and levy the expense in proportion to the benefits which, in their opinion, the estates, respectively, will receive from the work proposed; (2) an assessment by some definite standard fixed upon by the legislature itself, and which is applied to estates by a measurement of length, quantity or value." See, also, the very able opinion of Judge Sawyer in *Emery* v. *Gas Co.*, 28 Cal. 345.

We do not desire to create the impression that under no circumstances can the courts review the exercise of the power of

local assessment.  Cases may arise in which it will appear that no honest effort has been made to exercise the discretion which resides in the lawmaking power, but that a purely arbitrary fiat has gone forth to seize the citizen's property under the guise of the exercise of the taxing power.  When such a case presents itself, we will not hesitate to protect the citizen against spoliation, whatever mask it may wear.  See the reasoning of the court in *Dorgan* v. *City of Boston*, 12 Allen, 223, 237, 238.  But against the consequences of the unwise exercise by the legislature of the discretion intrusted to it we are powerless to give relief.  Many of the cases cited by counsel for plaintiff proceed on the principle that the courts may interfere when it is apparent that the legislature has not exerciced the taxing power at all, but has acted arbitrarily in determining by whom the burden of the cost of the local improvement shall be borne.  See, for instance, *Thomas* v. *Gain*, 35 Mich. 155.  That principle we fully recognize.  But we do not consider it as applicable to the case at bar.  Courts cannot interfere when the legislature has unwisely exercised the taxing power.  It is only when it is apparent that no honest effort to exercise that power at all has been made that this can be done. It is our option that the legislature could not have devised a more equitable system than the one here assailed.  Manifestly, an apportionment according to value would have been more unjust. And the very rule of apportionment for which counsel for plaintiff contends, while theoretically more fair, is, when we consider the favoritism which is possible under it; the errors in judgment which are inevitable when the quantum of benefit to each parcel of land has to be determined; and that, after all, the figures represent only the rough guesses of men,—in a word, when we look at this rule in its practical workings, we find that it is no more likely, indeed not as much calculated, to produce a just distribution of the burden as the very one the legislature has prescribed.

Much of the fear of disastrous consequences to the taxpayer for an abuse of the power of local assessment is fanciful.  Legislators are not destitute of a sense of justice.  They are controlled

by an intelligent and active public opinion. The laws they enact affect their own constituents. The governing body of the city is always intrusted with the power to decide whether the local improvement shall be undertaken; and usually (such being the case under the statutes of this state) the majority of the property owners who will be assessed for the work can veto the resolution of the city council directing it to be done. While cases of individual hardship will occur, and this must be expected, in the working of any tax system which can ever be devised, yet it is hardly conceivable that any scheme of local assessment will ever be formulated that in its whole scope will be oppressive and unjust.

The conclusion we have reached as to the legality of the statute, in so far as it requires all the expenses of the improvement to be assessed against the abutting property in proportion to frontage, leads necessarily to the further conclusion that there is no force in the contention of counsel for plaintiff that the taxpayer is not allowed a hearing by the law. It is true that he is given no hearing on the question of benefits. But he is furnished with an opportunity to demonstrate that the assessor in apportioning the tax according to frontage has committed an error by charging up against his land a larger sum than should be assessed against it. Section 2280, Rev. Codes. The right to a hearing at some stage in the proceedings is universally recognized where the apportionment of the tax involves the exercise of an act judicial in character; for instance, an assessment according to benefits. *Ulman* v. *Mayor, etc.* (Md.) 20 Atl. Rep. 141, 21 Atl. Rep. 709; *Mayor, etc.* v. *Ulman*, (Md.) 30 Atl. Rep. 43; *Mayor, etc.* v. *Scharf*, 54 Md. 499; *Spencer* v. *Merchant*, 125 U. S. 345, 8 Sup. Ct. 921; *Lent* v. *Tillson*, 140 U. S. 316, 11 Sup. Ct. 825; *Violett's Heirs* v. *City Council of Alexandria* (Va.) 23 S. E. Rep. 909; *Dietz* v. *City of Neenah* (Wis.) 64 N. W. Rep. 299; *Spencer* v. *Merchant*, 100 N. Y. 585, 3 N. E. Rep. 682; Cooley, Tax'n, 655; *Stuart* v. *Palmer*, 74 N. Y. 183. But there is authority for the proposition that, when the apportionment of the assessment involves only a mathematical calculation, the taxpayer is not entitled to be heard. *English* v. *Mayor, etc.*

(Del. Err. & App.) 37 Atl. Rep. 158; *Cleveland* v. *Tripp*, 13 R. I. 60; *Gillette* v. *City of Denver*, 21 Fed. Rep. 823; *Mayor, etc.* v. *Scharf*, 56 Md. 50; *Mayor, etc., of Baltimore* v. *John Hopkins Hospital*, 56 Md. 1; *Moale* v. *Mayor, etc.*, 61 Md. 224; *Alberger* v. *Mayor, etc.*, 64 Md. 1, 20 Atl. Rep. 988. The Maryland cases have, however, been overruled. See *Ulman* v. *Mayor, etc.*, 72 Md. 587, 20 Atl. Rep. 141, and 21 Atl. Rep. 709.

We are not called upon in this case to determine whether the legislature could have dispensed with a hearing, as it has not done so.

It is no objection to the law that it provides that the assessment shall be based upon an estimate of the cost before the work has been finished. See *English* v. *Mayor, etc.* (Del. Err. & App.) 37 Atl. Rep. 158; *Davidson* v. *New Orleans*, 96 U. S. 97; *Cleveland* v. *Tripp*, 13 R. I. 60.

Our conclusion is that the statute is valid, and we therefore reverse the judgment of the District Court, which is founded upon the contrary view of the law. All concur.

### ON APPLICATION FOR A REHEARING.

Despite the length of the original opinion in this case, we deem it due to the able argument made by counsel for the plaintiff in their petition for a rehearing that we should briefly discuss the particular point therein presented. Our apology for our elaborate treatment of the case is that we believed that nothing short of an exhaustive review of the whole subject would enable us to answer the ingenious and powerful presentation of the plaintiff's theory of the case by his counsel, both in their printed brief and their oral arguments. They contend in their petition for a rehearing that the law is unconstitutional because no board or officer is authorized to determine, after due notice to the public, what property will be benefited by the improvement. Their claim, in brief, is that, even conceding that the citizen has no right to be heard as to the quantum of benefit his property derives from the improvement or with respect to the basis of apportionment of the assessment, yet that he has a constitutional right to

be heard on the general question whether his land will be bene-
fited at all by the proposed public work. There certainly is no
article of the constitution which in terms gives this right to a
hearing; and the want of a hearing is all that the plaintiff can
complain of, for it is obvious that, in the case of the law we
uphold, a public body has expressly determined what property
will in all cases of street paving be peculiarly benefited thereby,
*i. e.* the legislature. That body has declared that the abutting
property will be specially benefited to the extent of the entire
cost of the work. And it is competent for such body to make
such a declaration. It is true that the general theory of excep-
tional benefit to the property in the particular taxing district
underlies all local assessments, and, in case of a plain disregard
of this general theory, the courts will afford relief. But, unless
such a case is presented, the question of benefits is legislative in
character, and the decision of the sovereign power on that ques-
tion is final. To compel the lawmaking power to accord to the
citizen a hearing on the question whether his property is benefited
at all is to take from that branch of the government the authority
to prescribe the limits of a taxing district,—a power concededly
legislative, and not judicial, in character. Besides, practically all
the adjudications are against this doctrine. In a great number of
cases, some of which are cited in the original opinion, it has been
held competent for the legislature to establish the front-foot rule
of apportionment; and yet this is a legislative determination
without notice, and without any right to a hearing (save as the
taxpayer is heard through his representative in the legislature),
that all the abutting property is benefited to an amount equal to
the cost of the work, or a fraction of the cost, as the case may be.
If the contention of the counsel for the plaintiff be correct, then
all of the decisions sustaining the front-foot rule, when fixed by
the legislature, are unsound. We do not so regard them. So
long as the legislature is not guilty of a plain disregard of the
general theory of special local benefit in enacting an assessment

law, its enactment must be sustained without reference to the question whether a hearing on the question is or is not allowed. In such a case it is competent for that body, in the exercise of its legislative discretion, to determine without any hearing what property shall pay the tax and how the burden shall be apportioned.

While fully appreciating all the force of the arguments advanced by counsel for plaintiff, and while conceding that a remarkably strong presentation of that side of the question has been made by them, we still believe that their vigorous assault upon the constitutionality of the law in question cannot be sustained. The petition for a rehearing is denied. All concur.